Sebra M. Bogart, William J. Wilcox, and Leonard F. Fitch, Libellants and Appellants, *v.* The Steamboat John Jay, her Tackle, &c. George Logan, Claimant.

The courts of the United States, in the exercise of admiralty and maritime jurisdiction, cannot take cognizance of questions of property between the mortgagee of a vessel and the owner.

The mere mortgage of a ship, other than that of an hypothecated bottomry, is a contract without any of the characteristics or attendants of a maritime loan, and is entered into by the parties to it, without reference to navigation or perils of the sea.

The admiralty courts in England now exercise a more ample jurisdiction upon the subject of mortgages of ships, but it is under a statute of Victoria; and in the United States the admiralty and maritime jurisdiction remains as it was before.

This was an appeal from the circuit court of the United States for the southern district of New York.

It was a libel filed by the appellants of the steamboat John Jay, to enforce payment of a mortgage upon the boat, under the circumstances stated in the opinion of the court.

The district court dismissed the libel, which decree was

affirmed by the circuit court, and the libellants appealed to this court.

It was submitted on the record by *Mr. Johnson*, for the appellants; and submitted by *Mr. Cutting*, for the appellee, upon a printed brief filed by himself and *Mr. Byrne*.

It is only necessary to state the following points for the appellee : —

First Point. The district court in admiralty had no jurisdiction of the cause of action set forth in the libel, it not being a maritime contract, or a maritime cause of action, or dependent on maritime risks. Hurry *v.* The Ship John and Alice, 1 Wash. R. 293 ; The Steamboat Orleans *v.* Phœbus, 11 Pet. 175 ; The Atlas, 2 Hagg. Adm. R. 48, 73 ; Abbott on Shipping, old paging 153, new 205.

Second Point. A court of admiralty has no power to enforce payment of a mortgage. The Dowthorpe, 2 W. Rob. 73 ; The Highlander, Ib. 109 ; Leland *v.* The Medora, 2 W. & M. 92, 97, 118.

Neither has it jurisdiction to decree possession, as between mortgagee and mortgagor. The Fruit Preserver, 2 Hagg. 181 ; The Neptune, 3 Ib. 132.

Mr. Justice WAYNE delivered the opinion of the court.

We will confine ourselves, in this opinion, to the inquiry, whether or not a court of admiralty has jurisdiction to decree the sale of a ship for an unpaid mortgage, or can, on that account, declare a ship to be the property of the mortgagees, and direct the possession of her to be given to them. The questions of pleading made in the case, and the other points argued, we shall not notice. The conclusion at which we have arrived makes that unnecessary.

The libellants were the owners of the steamer John Jay. They sold her to Joseph McMurray for the sum of $6,000 ; $1,000 in cash, and the residue of $5,000 upon a credit, for which promissory notes were given, payable to their order, in three, six, nine, twelve, fifteen, eighteen, twenty-one, and twenty-four months. On the day of sale, McMurray, the purchaser, executed in a single deed, containing the whole contract between himself and the libellants, a transfer of the boat to the latter as a security for the payment of his notes, with the proviso " that this instrument is intended to operate only as a mortgage to secure the full and just payment of the eight promissory notes given in consideration of the purchase-money of said vessel or steamboat." McMurray failed to pay the second note. Upon such failure the libel was filed. The libellants set out the con-

tract; allege that it was to operate as a mortgage to secure the payment of McMurray's notes; state his failure to pay the second note; claim, in the fifth article of their libel, that Mc-Murray's failure to pay had revested them with the title to the boat, and that McMurray's had become forfeited, from his non-compliance with the condition contained in the contract of sale. Their prayer is, that they may have a decree for the amount of the unpaid purchase-money, with interest and costs, and that The John Jay and her equipments may be condemned to pay the same. Afterwards, upon their appeal in the circuit court, they moved to amend their libel by inserting the words, " or that the steamboat John Jay may be decreed to be their property, and the possession be directed to be delivered to them."

To this libel George Logan, by way of answer, put in a claim of ownership of The John Jay, by a *bonâ fide* purchase from McMurray; and he further denies the jurisdiction of the court, upon the ground that the contract between the libellants and McMurray was not maritime; or a case of admiralty and maritime jurisdiction. It appears that McMurray had received the possession of the boat; that she had been enrolled at the custom-house in his name; that he first sold one fourth of her to Logan, and afterwards, on the 2d December, executed a bill of sale for the whole of her to Logan, which was recorded in the custom-house; and that thereupon The John Jay was enrolled and licensed in the name of Logan.

Upon the hearing of the cause in the district court, the libel was dismissed. It was carried, by appeal, to the circuit court, and the judgment of the district court having been affirmed, it is now here upon appeal from the circuit court. We think that the affirmance of the judgment of the district court was right, and will here briefly give our reasons for that opinion.

It has been repeatedly decided in the admiralty and common law courts in England, that the former have no jurisdiction in questions of property between a mortgagee and the owner. No such jurisdiction has ever been exercised in the United States. No case can be found in either country where it has been done. In the case of The Neptune, 3 Hagg. Admiralty Reports, 132, Sir John Nicholl, in giving his judgment, observes: " Now upon questions of mortgage, the court of admiralty has no jurisdiction; whether a mortgage is foreclosed, whether a mortgagee has a right to take possession of a chattel personal, whether he is the legal or only the equitable owner, and whether a right of redemption means that a mortgagee is restrained from selling in repayment of his debt till after the time specified for the redemption is passed, the decision of these questions belongs to other courts; they are not within the jurisdiction or

34 *

province of the courts of admiralty, which never decides on questions of property between the mortgagee and owner."

This is not so, because such a jurisdiction had been denied by the jealousy of the courts of the common law. Its foundation is, that the mere mortgage of a ship, other than that of an hypothecated bottomry, is a contract without any of the characteristics or attendants of a maritime loan, and is entered into by the parties to it, without reference to navigation or perils of the sea. It is a security to make the performance of the mortgagor's undertaking more certain; and, whilst he continues in possession of the ship, disconnecting the mortgagee from all agency and interest in the employment and navigation of her, and from all responsibility for contracts made on her account. Such a mortgage has nothing in it analogous to those contracts which are the subjects of admiralty jurisdiction. In such a case, the ship is the object for the accomplishment of the contract, without any reference to the use of her for such a purpose, There cannot be, then, any thing maritime in it. A failure to perform such a contract cannot make it maritime. A debt secured by the mortgage of a ship does not give the ownership of it to the mortgagee. He may use the legal title to make the ship available for its payment. A legal title passes conditionally to the mortgagee. Where there has been a failure to pay, he cannot take the ship *manu forti*, but he must resort either to a court of equity or to statutory remedies for the same purpose when they exist, to bar the mortgagor's right of redemption by a foreclosure, which is to operate at such time afterward, when there shall be a foreclosure without a sale, as the circumstances of the case may make it equitable to allow. Indeed, after a final order of foreclosure has been signed and enrolled, and the time fixed by it for the payment of the money has passed, the decree may be opened to give further time, if there are circumstances to make it equitable to do so, with an ability in the mortgagor to make prompt payment. Thornhill *v.* Manning, 7 Eng. Rep. 97, 99, 100.

Courts of admiralty have always taken the same view of a mortgage of a ship, and of the remedies for the enforcement of them, that courts of chancery have done of such a mortgage and of any other mortgaged chattel. But, from the organization of the former and its modes of proceeding, they cannot secure to the parties to such a mortgage the remedies and protection which they have in a court of chancery. They have, therefore, never taken jurisdiction of such a contract to enforce its payment, or by a possessory action to try the title, or a right to the possession of a ship. It is true that the policy of commerce and its exigencies in England have given to its admiralty courts

a more ample jurisdiction in respect to mortgages of ships, than they had under its former rule, as that has been given in this opinion. But this enlarged cognizance of mortgages of ships has been given there by statute 3 and 4 Victoria, ch. 65. Until that shall be done in the United States, by congress, the rule, in this particular, must continue in the admiralty courts of the United States, as it has been. We affirm the decree of the court below.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of New York, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby affirmed, with costs.