**COMMERCIAL BANKING CORPORATION v. ONE APPROXIMATELY 30–FOOT MOTOR BOAT, et al.**

No. 8554.

United States District Court D. New Jersey, Camden Division.

Sept. 21, 1949.

Louis B. LeDuc, Camden, N. J., James H. Molloy, Philadelphia, Pa., for libellant.

Arthur W. Lewis, Camden, N. J., Conlen, LaBrum & Beechwood, George E. Beechwood, Philadelphia, Pa. (Sund-

heim, Folz, Kamsler & Goodis, Philadelphia, Pa., of counsel), for respondent Miriam L. Belber.

MADDEN, District Judge.

This was a trial of an admiralty matter wherein the libellant sought both title and possession of a 30-foot motor cruiser known as the "Three Jays" or afterwards known as the "Merlin."

The facts stated briefly as possible, are as follows: That on August 9, 1945, one Alden G. Johnson was the owner and in possession of a 30-foot Owens Cabin Cruiser, having motor number ·N26249 and bearing Coast Guard Certificate of Operations number 11T105; that on said date, August 9, 1945, said Alden G. Johnson sold the boat to one Howard H. Holt for the sum of $4,286.50 of which $1,300 was paid on account by Holt and the balance secured by a bailment lease executed by Holt and Johnson.

The lease called for monthly payments on account by Holt, referring to these as rentals, and further provided: "Lessor (Johnson) does hereby covenant and agree that Lessee (Holt), on paying the specified installments and performing the aforesaid convenants, shall and may peaceably and quietly have hold, use and enjoy the said boat for the term of this agreement. Lessor further agrees that if, upon the termination of this lease, and the surrender of said boat as aforesaid, said rental has been fully paid in cash, and the other covenants and agreements herein contained have been observed, kept and performed by Lessee as herein provided, Lessee may elect to become and shall thereupon become the owner of the leased property upon the further payment of the sum of one dollar."[1]

The form then contains a separate instrument known in Pennsylvania as a judgment note and authorizing judgment to be entered against Holt for the unpaid balance of the purchase price or rent.

---

[1]. The lease was the ordinary printed form of lease executed at the time of purchasing and financing an automobile. The word "automobile" having been stricken therefrom and the word "boat" substituted in typewriting.

The form lastly contains a printed form of assignment and on August 9, 1945 (the same date it was executed by Holt), Johnson assigned all his rights under the bailment lease to the libellant, Commercial Banking Corporation, a corporation of Pennsylvania. All the proceedings between Johnson, Holt and the Commercial took place at the Commercial's office in Philadelphia and under the supervision of George B. Rementer, the Vice President and secretary of Commercial Banking Corporation.

At the same time Johnson executed to Commercial Banking Corporation what is purported to be an absolute bill of sale for said boat. An examination of it is interesting.

"For value received, I Alden Johnson have this day sold, assigned, transferred and delivered unto Commercial Banking Corporation the above described automobile as inducements for the payment of the purchase price, the dealer expressly warrants and represents: that dealer is sole owner of the above described car; that it is at present in possession of Howard H. Holt, 1133 S. 52nd St., Phila., Pa., under *bailment lease* agreement with dealer, which has this day been assigned to Commercial Banking Corporation; that the said automobile is conditional sales unencumbered and no other person or persons have any right, title or interest therein, except the said lessee, that said automobile has not been used for hire or as a taxi-cab or as a public conveyance; that the signatures of the lessee on the said agreement are genuine and no representation has been made to said lessee at variance with the lessee's agreement; that no credit has been given to said lessee, except for cash payments, unless otherwise noted on said agreement, and if credit has been given for an old machine delivered to dealer that the amount of the credit represents the fair market value of said traded-in automobile; that application for a Pennsylvania certificate of title on the above described automobile, properly and fully executed, with notation thereon of encumbrance in favor of Commercial Banking Corporation said certificate of title immedi-

ately upon receipt; that the acceptance of check to dealer's order for the selling price, shall be a ratification of authority of the person signing this bill of sale as authorized agent for dealer; and that all statements made in 'Statement of Transaction' in connection with regulation W and signed by purchaser are true and correct.

"In Witness Whereof, the said dealer has hereto set his hand and seal the day and year first above mentioned.

"(Signed)   Alden Johnson   (Seal)
Dealer
"(By)   Alden G. Johnson
Officer, firm member of owner."

Prior to the proceedings Johnson held what is known as a "Certificate of Award of Number to an Undocumented Vessel," bearing No. 11T105, issued by the U.S. Coast Guard at Philadelphia, Pennsylvania. These certificates, on the face, besides describing the vessel say:

"This is to certify, that the vessel herein described has been awarded the above number in accordance with the provisions of the Act of June 7, 1918, as amended.

"This certificate constitutes a document in lieu of enrollment or license and it must be kept on board at all times, except in the case of vessels of less than 17 feet in length, or vessels whose design or fittings are such that carrying such certificate on board would render it imperfect, illegible, or would otherwise tend to destroy its usefulness as a means of ready identification. Failure to have this certification on board vessel, on which it is required to be carried, will subject the owner to a penalty of ten dollars. In addition, a failure to produce it upon demand of a proper officer will also subject the master or operator to other penalty."

On the reverse side is printed this matter:

"In case of change of ownership the bill of sale below should be executed and the certificate delivered to the purchaser, who must, within 10 days, deposit the same with the District Coast Guard Officer in charge of the district in which the purchaser re-

sides, who will issue a new certificate to the new owner.

"In case of the loss, abandonment, or destruction of the vessel, notice of such loss, abandonment, or destruction must be filed with the District Coast Guard Officer within 10 days. Failure to notify the District Coast Guard Officer of the loss, abandonment, or destruction of a numbered vessel, or change in ownership, subjects the owner to a penalty of ten dollars."

Below this, and also on the back, the certificate contains a form of bill of sale:

"In consideration of the sum of $1.00 (one dollar) lawful money of the United States of America, in hand paid, and other valuable considerations this —— day of ——, I (we) ——, owner(s) of the vessel described in this certificate, hereby sell and transfer all of my (our) right, title, and interest in the same to —— of ——."

On the 10th day of August, 1945, (the day after the execution of the bailment lease, the assignment thereof and also the purported bill of sale to Commercial), Alden G. Johnson and Howard H. Holt appeared at the office of the United States Coast Guard where Johnson surrendered his Certificate of Award of Number and executed the form of bill of sale therein contained to Howard H. Holt. Thereupon, Holt made application for the issuance of a certificate in his name, which certificate was issued by the Coast Guard on August 11, 1945, awarding the same number 11T105, to the boat.

Early in September, 1945, respondent, Miriam L. Belber, together with her husband, visited the Quaker City Boat Yard in Philadelphia, Pennsylvania, seeking to purchase a boat. Eventually, they became acquainted with Holt who informed them that he was the owner of the boat in question. After some days of negotiating, during which time Holt exhibited to the Belbers the Certificate of Award in his name and also the previous certificate in Johnson's name with Johnson's signature on the bill of sale portion thereof, dated August 10, 1945, transferring title to Holt, respondent Belber agreed, on September

10, 1945, to purchase the boat from Holt and engaged the services of Allen J. Levin, Esquire, a member of the Bar of Philadelphia, who represented her in that transaction.

Levin went to the office of the Coast Guard in the Custom House at Philadelphia and there made a search of registration for the "Three Jays" and found the records to disclose the registration in the name of Howard H. Holt. In addition, Levin secured from Holt an affidavit on the same date, September 10, 1945, which stated that he was the owner of the boat; that he was transferring it to respondent Belber and that there were no liens or encumbrances against the boat.

Thereupon, Holt executed the bill of sale on the back of his Certificate of Award of Number to Mrs. Belber. She paid Holt in full with a check dated September 10, 1945, in the amount of $4,350 and made application to the Coast Guard for a Certificate in her name, which was issued on the same day. Thereupon, the Belbers took over actual possession of the boat and Holt navigated it to Atlanta City, New Jersey for the Belbers.

Shortly afterward Holt absconded defaulting upon the bailment lease with Commercial after making two payments of $125.00 each to libellant.

On January 19, 1946, libellant Commercial, entered judgment in the Court of Common Pleas of Philadelphia County, Pennsylvania, against Holt in the sum of $3,178.90, representing the principal sum due plus interest and attorneys' collection fees.

On July 9, 1946, Commercial Banking Corporation filed a libel in this court seeking the recovery of possession and title of the boat. Mrs. Belber alone has responded.

Commercial alleges that Johnson, being the true owner, sold the boat to Commercial by the purported bill of sale and assignment of the bailment lease and that, therefore, no title could flow to the Belbers from Holt. Belbers allege that the bailment lease and purported bill of sale are not a sale but the creation of a lien for

security purposes with the boat as security. The Belbers defenses to the action are numerous. The first requiring our attention is that this court, as a court of admiralty, has no jurisdiction.

At this point it would be well to point out that all these negotiations took place in Pennsylvania. Commercial is a corporation of Pennsylvania. Johnson, Holt (until he absconded) and Belber are all citizens of Pennsylvania and at the time the boat was in Pennsylvania. Hence, no diversity exists. The boat was seized in Atlantic City under admiralty process.

The attack upon this court's jurisdiction is upon the grounds that unless a mortgage upon a ship meets all the provisions of the Ship Mortgage Act,[2] admiralty will not entertain jurisdiction to enforce the property rights or possession between a mortgagee and an owner.

In Detroit Trust Co. v. Barlum S. S. Co., 293 U.S. 21, at page 42, 55 S.Ct. 31, at page 37, 79 L.Ed. 176, Justice Hughes, who delivered the opinion of the court, said: "It is also to be noted that the jurisdiction granted to the admiralty by the Ship Mortgage Act is exclusive. If a mortgage is within the Act, there can be no suit to foreclose it in a state court; *if the mortgage is not within the Act, there can be no suit for foreclosure in the admiralty.* It cannot be doubted that the Congress recognized the importance of basing the jurisdiction, as thus sought to be conferred, upon precise statutory conditions." (Italics ours.)

It is not urged by libellant that the bailment lease fulfills the requirements of the Ship Mortgage Act, but to the contrary, it alleges that it is the owner unlawfully done out of its possession. In this regard, however, it might be well to note that at no time was Commercial in actual possession, but merely made an inspection to see if the physical condition of the boat warranted the lending of that sum of money with it as security.

There is no doubt in the mind of the court that if one were an absolute owner and a vessel was unlawfuly taken from him by one who had no color of title or right

of possession, admiralty would have jurisdiction to cause the return to the rightful owner. But where ownership is conditional or right of possession is contingent upon the non-payment of the terms of a mortgage, bailment lease or conditional sale contract, the jurisdiction of admiralty is not so clearly established.

In Robinson on Admiralty (1939), Chapter 6, Section 22, under Remedies Available for Maritime Contract, at page 194, it is stated: " * * * *But when the ship was made the subject of an ordinary common law mortgage, the admiralty courts, under the general admiralty law withdrew from the scene.* The leading case is Bogart v. The John Jay, [17 How. 399, 15 L.Ed. 95]. Bogart sought in an admiralty court to have an ordinary common law purchase money mortgage foreclosed. The court dismissed the libel. Dismissal could rest upon the theory that the contract was maritime but that the admiralty court's armory is without the remedy asked; it could also rest upon the theory that the contract was not maritime at all. The court stated that: 'Its foundation (of jurisdiction) is, that the mere mortgage of a ship, other than that of an hypothecated bottomry, is a contract without any of the characteristics or attendants of a maritime loan, and is entered into by the parties to it, without reference to navigation or perils of the sea. * * * There cannot be anything maritime in it.'" (Italics ours.)

Benedict on Admiralty (Fifth Edition), Possessory and Petitory Actions, provides at page 101, Section 73, Chapter X:

"The admiralty has also jurisdiction of possessory and petitory suits and of proceedings on the part of the owners for the removal of the master.

"Petitory suits are suits in which it is sought to try the title to a ship independently of any possession of the vessel. A possessory action may be joined with a petitory action.

" * * * In this country, the jurisdiction of the admiralty over all this class of cases is well settled; but it will not enforce a merely equitable title of one out of pos-

2. Title 46 U.S.C.A. § 911 et seq.

session, yet may notice an equitable title alleged by a claimant in possession."

And further at page 173, Section 108: "Bottomry loans are those in which a sum of money is loaned for a particular voyage, at maritime interest, on the security of the ship, or the ship and freight, or the ship, freight and cargo, on condition that if the voyage be performed safely, the loan shall be repaid with the interest, and if she do not so arrive but is lost by a peril of the sea, nothing shall be paid. The lender thus takes the risk of the voyage and the loss of the vessel discharges the obligation as completely as payment. Such loans are within the admiralty jurisdiction even if they are given in part to secure non-maritime disbursements. But if it be stipulated that the lender shall not incur maritime risk, admiralty has no jurisdiction although the loan be such that without such stipulation the court would have jurisdiction. Suits on bottomry bonds are goverened by General Admiralty Rule Seventeen."

■ In Bogart et al. v. The Steamboat John Jay, 17 How. 399, at page 401, 58 U.S. 399, at page 401, 15 L.Ed. 95, Mr. Justice Wayne, in speaking of the jurisdiction of the admiralty court, said: "* * * *Its foundation is, that the mere mortgage of a ship, other than that of an hypothecated bottomry, is a contract without any of the characteristics or attendants of a maritime loan, and is entered into by the parties to it, without reference to navigation or perils of the sea. It is a security to make the performance of the mortgagor's undertaking more certain; and, whilst he continues in possession of the ship, disconnecting the mortgagee from all agency and interest in the employment and navigation of her, and from all responsibility for contracts made on her account. Such a mortgage has nothing in it analogous to those contracts which are the subjects of admiralty jurisdiction.*" (Italics ours.)

And further at pages 401 and 402 of 17 How.: "Courts of admiralty have always taken the same view of a mortgage of a ship, and of the remedies for the enforcement of them, that courts of chancery have done of such a mortgage and of any other mortgaged chattel. But, from the organization of the former and its modes of proceeding, they cannot secure to the parties to such a mortgage the remedies and protection which they have in a court of chancery. They have, therefore, never taken jurisdiction of such a contract to enforce its payment, or by a possessory action to try the title, or a right to the possession of a ship. It is true that the policy of commerce and its exigencies in England have given to its admiralty courts a more ample jurisdiction in respect to mortgages of ships, than they had under its former rule, as that has been given in this opinion. But this enlarged cognizance of mortgages of ships has been given there by statute 3 and 4 Victoria, ch. 65. Until that shall be done in the United States, by Congress, the rule, in this particular, must continue in the admiralty courts of the United States, as it has been. We affirm the decree of the court below."

In Re Amelia, C.C., 23 F. 406, Fed.Cas. No. 275, it was said: "* * * The case, therefore, is substantially, as it is stated in the opinion of the district court, an attempt to enforce an equitable interest as against a legal title. This the court of admiralty does not undertake. When it proceeds in a petitory suit, it proceeds upon legal title."

In Atamanchuck v. Atamanchuck et al., D.C., 61 F.Supp. 459, at page 460, Judge Meaney said: "An Admiralty Court will not undertake to enforce an equitable interest as against legal title. When it proceeds in a petitory suit, it proceeds upon legal title."

■ In The Steamer Eclipse, Braithwaite, 135 U.S. 599, at page 608, 10 S.Ct. 873, at page 876, 34 L.Ed. 269, Justice Fuller, who delivered the opinion of the court, said: "* * * While the court of admiralty exercises its jurisdiction upon equitable principles, it has not the characteristic powers of a court of equity. It cannot entertain a bill or libel for specific performance, or to correct a mistake, Andrews v. Essex [Fire & Marine] Ins. Co., [Fed.Cas. No. 374]; 3 Mason, 6, 16; or declare or enforce a trust or an equitable title, Ward v. Thompson, 22 How. 330 [350], [16 L.Ed. 249]; The Amelia, [Fed.

Cas. No. 6,487], 6 Ben. 475; Kellum v. Emerson, [Fed.Cas. No. 7,669], 2 Curtis 79; or exercise jurisdiction in matters of account merely, Grant v. Poillion, 20 How. 162, [15 L.Ed. 871]; Minturn v. Maynard, 17 How. 477 [15 L.Ed. 235]; The Ocean Belle, [Fed.Cas. No. 10,402], 6 Ben. 253; *or decree the sale of a ship for an unpaid mortgage, or declare her to be the property of the mortgagees, and direct possession of her to be given to them.* Bogart v. The John Jay, 17 How. 399, [15 L.Ed. 95]." (Italics ours.)

 In The J. E. Rumbell, 148 U.S. 1, at page 15, 13 S.Ct. 498, at page 501, 37 L.Ed. 345, Mr. Justice Gray, who delivered the opinion of the court, said: *"An ordinary mortgage of a vessel, whether made to secure the purchase money upon the sale thereof or to raise money for general purposes, is not a maritime contract. A court of admiralty, therefore, has no jurisdiction of a libel to foreclose it, or to assert either title or right of possession under it."* (Italics ours.)

In this district, Judge Forman felt that there was no distinction between a mortgage and a bill of sale as far as admiralty jurisdiction was concerned when he expressed himself in The Captain Johnson, D.C., 64 F.Supp. 559, at page 560:

"In The Helys, D.C., 173 F. 928, the libellants alleged that they were the lawful owners of a gasoline yacht which had been wrongfully withheld from them by one holding their mortgage, the execution of which had been induced by fraudulent misrepresentations. The court said: 'So far, however, as appears from the libel, the question involves a mortgage of the vessel and the court in order to determine the action would be required to adjudicate upon the validity of the mortgage and try the questions of fraud and mistake. Gillespie is apparently rightfully in possession and until these questions are determined adversely to him, should continue in possession. It is well settled that admiralty will not entertain jurisdiction of a matter of this kind. The G. Reusens, D.C., 23 F. 403; The Amelia, C.C., 23 F. 406, [Fed. Cas. No. 275].' 173 F. at page 929.

"Substitute 'bill of sale' for mortgage and Lillian B. Johnson for Gillespie and

the language is dispositive of the case before us."

The same view was expressed by Judge Holly for the Northern District of Illinois in William v. The Cabin Cruiser "Atte-Wode", 1941 American Maritime Cases 1428.

 It is, therefore, quite apparent to this court that admiralty cannot be used to enforce a loan, not maritime in nature, upon the ship given to secure it. In the words of Justice Hughes in Detroit Trust Co. v. Barlum S. S. Co., supra: "If the mortgage is not within the Act, there can be no suit for foreclosure in the admiralty."

 In this case there is no diversity between the parties and jurisdiction could not be maintained unless in admiralty. The court naturally is bound by precedent as hereinbefore expressed and is of the opinion that the suit is one to foreclose a lien given to secure a debt not maritime in nature and consequently admiralty is without jurisdiction. The libel is accordingly dismissed.

This makes it unnecessary to decide the other defenses presented and considered by the court upon this hearing.