STATE of Alaska, Appellant,

v.

F/V BARANOF, its gear, paraphernalia, etc.; Baranof Fisheries, a Washington Limited Partnership; Rainier National Bank; Rainier National Bank, as Trustee for Universal Seafoods, Inc., Appellees.

F/V BARANOF, its gear, paraphernalia, etc.; Baranof Fisheries, a Washington Limited Partnership, Rainier National Bank; Rainier National Bank, as Trustee for Universal Seafoods, Inc., Cross-Appellants,

v.

STATE of Alaska, Cross-Appellee.

Nos. 7287, 7324.

Supreme Court of Alaska.

Feb. 10, 1984.

12. AS 16.43.010(a).

Kathleen I. McGuire, Asst. Atty. Gen., Anchorage, Robert M. Maynard, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellant/cross-appellee.

Terence P. Lukens, Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Seattle, Wash., and James M. Gorski, Hughes, Thorsness, Gantz, Powell, Brundin, Anchorage, for appellees/cross-appellants.

Carol E. Dinkins, Asst. Atty. Gen., J. Vance Hughes, Donald A. Carr, and Leslie M. Madden, Attys., U.S. Dept. of Justice, and Margaret Frailey, Nat. Oceanic and Atmospheric Admin., Washington, D.C., for Secretary of Commerce as amicus curiae.

R.H. Connett, Asst. Atty. Gen., Mary E. Hackenbracht, Deputy Atty. Gen., John K. Van de Kamp, Atty. Gen., San Francisco, Cal., for state of Cal. as amicus curiae.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This appeal is from an *in rem* forfeiture proceeding instituted by the State of Alaska against the F/V Baranof, a vessel used for the harvesting of king crab off the the Alaska coast. The State alleged that the Baranof exceeded its authorized catch limit under Alaska law, and was hence subject to forfeiture under AS 16.05.195.

The trial court, Judge Moore presiding, dismissed the State's suit, ruling that the Magnuson Fishery Conservation and Management Act (hereafter FCMA) pre-empted state regulation of king crab harvesting and provided for exclusive jurisdiction in the federal courts. The trial court ruled in favor of the State that: (1) federal admiralty jurisdiction was not exclusive for an *in rem* forfeiture action brought by the State for violation of state law; (2) federal jurisdiction was not exclusive based on the fact that a maritime lien created under federal law was attached to the Baranof; and (3) the Baranof's due process rights were not violated by the seizure of the vessel without a prior hearing. We reverse the trial court on the issue of pre-emption and jurisdiction under the FCMA, and affirm on the remaining issues.

## I. FACTS

The defendant, F/V Baranof, is a vessel owned by Baranof Fisheries, a Washington state limited partnership. The F/V Baranof is registered with the Coast Guard and

has its home port in Seattle, Washington. The vessel is also registered in Alaska and has been issued an Alaska Department of Fish and Game vessel number. On May 9, 1981, officers of the Alaska State Division of Fish & Wildlife Protection seized the F/V Baranof in Dutch Harbor, Alaska under authority of a search and seizure warrant issued on May 7, 1981. On May 11, 1981, the State of Alaska filed a civil complaint *in rem* (the vessel itself being the only named defendant) in superior court for the forfeiture of the F/V Baranof pursuant to AS 16.05.195, alleging unlawful harvest, transportation, and possession of king crab in 1979 and 1980. On May 12, 1981, the State filed a motion for publication of notice to owners and other interested parties, which was granted on May 14, 1981. · Negotiations for release of the vessel were commenced immediately, and on May 27, 1981, the ship was released under a Special Release Agreement. It is undisputed that the alleged violations occurred in waters outside the three-mile limit of the Alaskan territorial sea.

On June 8, 1981, the F/V Baranof filed a petition to remove the case to the United States District Court for the District of Alaska. Baranof Fisheries appeared and claimed ownership through its general partner. Rainier National Bank also appeared and filed claims to the F/V Baranof as a preferred ship mortgage holder. The defendant and claimants thereto (hereafter referred to jointly as the Baranof) raised the following arguments to support federal subject matter jurisdiction: diversity jurisdiction; the Fishery Conservation and Management Act (FCMA), 16 U.S.C. §§ 1801–1882, pre-empts coastal state regulation of fishing seaward of the three-mile territorial boundary of the state; the federal courts have exclusive admiralty jurisdiction of all *in rem* proceedings over documented United States vessels under the United States

Constitution, Art. III, § 2, and under 28 U.S.C. § 1333; the Ship Mortgage Act, 46 U.S.C. §§ 911–984, creates exclusive federal jurisdiction over vessel forfeitures; and seizure of the defendant without a prior hearing violated the owners' fourteenth amendment due process rights.

The district court held on the merits that this case was not within the general admiralty jurisdiction of the federal courts, and that there was no diversity. The court further held that none of the other bases of federal subject matter jurisdiction asserted by the Baranof was sufficient. The Baranof's arguments in regard to the fourteenth amendment, FCMA pre-emption of state regulation and enforcement, and the Ship Mortgage Act were not evident from the face of the State's well-pleaded complaint, rather they were interposed as defenses to state law claims. These arguments, therefore, were to be addressed in the state courts. The district court remanded the case to superior court on October 27, 1981.

On January 29, 1983, the Baranof filed a pre-answer motion to dismiss. The Baranof stated alternative arguments identical to those raised in its petition to remove (except for dropping the claim of diversity jurisdiction), and also asserted that federal jurisdiction was exclusive under the FCMA. The trial court granted the motion to dismiss on the issues of pre-emption and jurisdiction under the FCMA,[1] but rejected the Baranof's other grounds. The State appealed and the Baranof cross-appealed.

## II. THE FCMA

### A. BACKGROUND

The Magnuson Fishery Conservation and Management Act (FCMA) was enacted in 1976 to protect the United States fishing industry and dependent coastal economies

---

**1.** Both parties stated in oral argument that the trial court did not rule on the pre-emption issue under the FCMA. We disagree. The trial court stated, "[d]efendant/claimant's motion to dismiss on the basis that the Fisheries Conservation and Management Act 16 U.S.C. § 1801—*et seq.* preempts any State claim because the Unit-

ed States has exercised exclusive fishery management authority ... is granted." Since this issue was decided below and has been briefed before this court (including *amicus* briefs filed by the United States Secretary of Commerce and the Attorney General of the State of California), we shall decide the matter on the merits.

from the stresses caused by overfishing in the seas adjacent to territorial waters, particularly by foreign fishing fleets. 16 U.S.C. § 1801.[2] Consistent with this purpose, the FCMA established a fishery conservation zone [3] (FCZ) beyond the territorial sea, within which zone the United States would exercise fishery management authority and limit the access of foreign boats. 16 U.S.C. §§ 1811, 1812. Within the federal zone, Congress envisioned "[a] national program for the conservation and management of the fishery resources of the United States ... to prevent overfishing, to rebuild overfished stocks, to insure conservation, and to realize the full potential of the Nation's fishery resources." 16 U.S.C. § 1801(a)(6).

The framework established by the Act to accomplish these purposes called first for the establishment, through cooperative action of the states and the federal government, of Regional Fishery Management Councils. 16 U.S.C. § 1852. Following their organization, the Councils were to develop fishery management plans with respect to those stocks of fish requiring conservation and management. *Id.* Approved plans were to be implemented and enforced by the Secretary of Commerce. 16 U.S.C. §§ 1854, 1855, 1861.

## B. PRE-EMPTION

■■■ When Congress passes legislation authorized by its constitutional powers,[4] conflicting state legislation may be preempted by the supremacy clause of the United State Constitution.[5] J. Nowak, R. Rotunda & J. Young, Constitutional Law 267 (1978). Pre-emption of state law will occur when Congress evidences an intent to occupy an entire field, *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 994–95, 55 L.Ed.2d 179, 188 (1978); *Alaska Board of Fish and Game v. Thomas*, 635 P.2d 1191, 1192 (Alaska 1981), or when state and federal laws are in actual conflict. *Lockheed Air Terminal, Inc. v. City of Burbank*, 457 F.2d 667 (9th Cir.1972), *aff'd* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *F/V American Eagle v. State*, 620 P.2d 657, 662 n. 10 (Alaska 1980), *appeal dismissed* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982).

Since no federal king crab regulations have been promulgated under the FCMA, our inquiry is restricted to the question of whether Congress occupied the field of regulation of king crab fishing. In deciding this question, we must ascertain Congress' intent in passing the FCMA. "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Shaw v. Delta Airlines, Inc.*, — U.S. —, —, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490, 500 (1983). Further, pre-emption will be found only when the "clear and manifest purpose" of Congress was to occupy the field. *Philadelphia v. New Jersey*, 437 U.S. 617, 621 n. 4, 98 S.Ct. 2531, 2534 n. 4, 57 L.Ed.2d 475, 479–80 n. 4 (1978); *Webster v. Bechtel*, 621 P.2d 890, 898 (Alaska 1980).

### 1. *Explicit Pre-emption*

Prior to passage of the FCMA, it is clear that states could regulate fishing beyond their three mile territorial sea in the absence of conflicting federal law or undue impediment to interstate commerce. *See*

---

**2.** For the legislative history of the FCMA, see Committee on Commerce, and National Ocean Policy Study, 94th Cong., 2d Sess., *A Legislative History of the Fishery Conservation and Management Act of 1976. See also* Magnuson, *The Fishery Conservation and Management Act of 1976: First Step Toward Improved Management of Marine Fisheries*, 52 Wash.L.Rev. 427 (1977).

**3.** The fishery conservation zone is defined in the FCMA as that area contiguous to the territorial sea, the outer boundary of which is 200 nautical

miles from the baseline from which the territorial sea is measured. The inner boundary of this zone is a line coterminous with the seaward boundary of each coastal state. 16 U.S.C. § 1811.

**4.** There is no dispute that Congress validly passed the FCMA pursuant to its power under the commerce clause. U.S. Const. art I, § 8.

**5.** U.S. Const. art VI, cl. 2.

*Skiriotes v. Florida,* 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941) (upholding direct state regulation of the fishing activity of its citizens beyond the territorial sea where state has legitimate interest in matter regulated). *See also Bayside Fish Flour Co. v. Gentry,* 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772 (1936) (upholding indirect state control of exploitation of fishery resources beyond territorial sea through law regulating possession, transportation, or disposition of fish landed within state where such landing law served state interest in preservation of resources in territorial sea); *State v. Bundrant,* 546 P.2d 530 (Alaska), *appeal dismissed sub nom. Uri v. Alaska,* 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 66 (1976) (*Skiriotes* extended to permit direct state regulation of fishing activity of non-citizens beyond the territorial sea where non-citizen has sufficiently close contacts with the state and activity has potentially detrimental effect upon resources in territorial sea).

Congress, in passing the FCMA, narrowed state authority somewhat by providing that federal management was exclusive outside the three mile limit with one exception. 16 U.S.C. § 1812 provides that, "[t]he United States shall exercise exclusive fishery management authority, in the manner provided for in this chapter, over ... (1) [a]ll fish within the fishery conservation zone." 16 U.S.C. § 1856(a) provides in relevant part that:

No state may directly or indirectly regulate any fishing which is engaged in by any fishing vessel outside its boundaries, *unless such vessel is registered under the laws of such State.*

(Emphasis added). These provisions evidence a specific congressional decision to assert federal jurisdiction in the FCZ without fully occupying the field. Preserved to the states is the authority to regulate state

registered vessels in the FCZ. The FCMA thus alters prior law in regard to the legitimate exercise of extraterritorial state jurisdiction by replacing the citizenship and close contacts tests with a registration requirement.

■ In summary, we cannot conclude that the FCMA on its face pre-empts all state extraterritorial regulation. Other courts which have considered this issue, at least when no federal regulations had been promulgated for the specific species of fish, have agreed. *See Anderson Seafoods, Inc. v. Graham,* 529 F.Supp. 512 (N.D.Fla.1982) (upholding state statute prohibiting use of purse seine within or without the waters of the state as applied to fisherman with vessel registered in state operating beyond state territorial boundary); *People v. Weeren,* 26 Cal.3d 654, 163 Cal.Rptr. 255, 607 P.2d 1279, *cert. denied,* 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980) (upholding state assertion of penal jurisdiction in situation wherein defendant used state licensed vessel to take swordfish in FCZ in violation of state regulations and no federal regulatory plan for swordfish had been implemented); *cf. State v. Sterling,* 448 A.2d 785 (R.I.1982) (FCMA pre-empts state regulation of commercial fishing for a particular species of fish where federal regulations governing such fishing have been promulgated).[6]

### 2. *Implicit Pre-emption*

Neither can we conclude that Congress implicitly pre-empted all state regulation in the FCZ. First, 16 U.S.C. § 1856(a) specifically allows regulation of state registered vessels. Thus, cases holding that the very delegation of regulatory power to an administrative agency supersedes state regulation, even in the absence or the failure of the federal agency to fully exercise its authority,[7] are distinguishable and inapposite.

---

**6.** One Florida appellate court has held that the FCMA pre-empts all state regulation of fishing in the FCZ. *Tingley v. Allen,* 397 So.2d 1166 (Fla.App.1981). However, another Florida appellate court has subsequently rejected this holding. *State v. Southeastern Fisheries Ass'n,* 415 So.2d 1326, 1329 (Fla.App.1982). *See also*

*Anderson Seafoods,* 529 F.Supp. at 514 (rejecting *Tingley* ).

**7.** *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Bethlehem Steel Co. v. New York State Labor Relations Bd.,* 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947).

Second, a holding that the FCMA pre-empted all state regulation in the FCZ even in the absence of the promulgation of federal regulations would frustrate the primary purpose of the FCMA, which is to provide proper management to ensure the fisheries are not depleted. The process of instituting federal regulation under the FCMA is extensive and lengthy.[8] It is difficult to believe that Congress contemplated pre-empting state efforts to conserve fishing resources in the interval between passage of the Act and adoption of federal regulations covering a specific species of fish.[9] A contrary conclusion would conflict with the Act's stated purposes.

Third, the North Pacific Fishery Management Council has prepared a fishery management plan and proposed federal regulations for king crab fishing in waters outside the Alaskan territorial sea. The Secretary of Commerce currently is reviewing the plan. Under the proposed plan, the fishery will be governed by federal standards which wholly incorporate the Alaskan state regulations. If approved by the Secretary, the incorporated Alaskan regulations will become the federal regulatory scheme. This negates any inference that the Council has decided that regulation of the king crab fishery in the FCZ outside Alaskan water is unnecessary. Furthermore, it is strong evidence that the Alaskan regulatory regime does not stand as an obstacle to the accomplishment and execution of the purpose of the FCMA.

Fourth, the Secretary of Commerce, the federal official charged with implementing the FCMA, has filed an *amicus* brief urging us to hold that the Act does not pre-empt state regulation of king crab. This interpretation by the agency responsible for the FCMA's administration is entitled to considerable weight. *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616, 619 (1965); *United States v. RCA Alaska Communications, Inc.*, 597 P.2d 489, 498 (Alaska 1979). Thus, we conclude that the FCMA did not pre-empt Alaskan king crab regulation of vessels registered in Alaska.

### 3. *Registration*

State regulation is only allowed outside the three mile state territorial sea if the vessel to be regulated "is registered under the laws of such state." 16 U.S.C. § 1856(a). The Baranof contends that this registration provision is confined to the federal registration requirements applicable when the FCMA was enacted. *See* 46 U.S.C. § 17 (repealed Dec. 24, 1980). Under this interpretation, the F/V Baranof was registered only in the State of Washington. We disagree.

We believe the plain meaning of the language, "under the laws of such state" is to

---

**8.** Fishery management plans must contain: an extensive biological, economic, historical, and operational description of the fishery to be regulated, 16 U.S.C. § 1853(a)(2); an assessment of the present and probable future biologic condition of the fishery, and the maximum sustainable yield and "optimum yield" to be derived therefrom, 16 U.S.C. § 1853(a)(3); and further assessments relating to foreign participation in the fishery, 16 U.S.C. § 1853(a)(4). All of these assessments are required to be based on the best scientific information which can be gathered. 16 U.S.C. §§ 1851(a)(2), 1852(g)(1). The plans are developed by the Regional Fishery Management Councils established by the FCMA with the participation of "all interested persons" through public hearings. 16 U.S.C. § 1852(h)(3). Once approved by a Regional Council, a fishery management plan is submitted to the Secretary of Commerce for review and for public comment on proposed regula-tions, 16 U.S.C. §§ 1854(a) and (b), after which the Secretary may approve the plan or disapprove it in whole or in part. *Id.* Where the Secretary finds a plan to be consistent with the national standards established by the FCMA the plan will be implemented by final regulations. 16 U.S.C. § 1855.

**9.** The FCMA does authorize the Secretary of Commerce to promulgate emergency regulations even in the absence of a federal fishery management plan. 16 U.S.C. § 1855(c). However, these emergency regulations can remain in effect for only forty-five days (with one forty-five day extension available). *Id.* The short term nature of this provision indicates it was not meant to be utilized to comprehensively regulate the fisheries during the lengthy period from the passage of the Act until adoption of federal regulations.

give effect to state registration laws.[10] A contrary interpretation would render this language meaningless and thus violate a cardinal principle of statutory construction. 2A C. Sands, Sutherland Statutory Construction § 46.06, at 63 (4th ed. 1973). *See also United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615, 624 (1954).

The Baranof's interpretation also would severely restrict a state's authority to regulate fishing off its waters. The Act's express recognition of extraterritorial jurisdiction would be virtually meaningless. The California Supreme Court in *People v. Weeren* rejected a similarly narrow interpretation of "registration." The court found significance in the fact that:

> [B]ecause the federal government has developed no swordfish regulations, the exclusion of any such state regulation would create the danger of wholly unregulated exploitation of that species in coastal waters and on the high seas, thus resulting in the possibility of substantial or, indeed, total depletion of an important natural resource. Had Congress intended by its successive enactments such a drastic curtailment of the states' *Skiriotes* jurisdiction, it would have said so. On the contrary, though undoubtedly aware of various state fishing "registration" schemes such as California's, Congress avoided all reference to the long established terms of art in the federal documentation laws, and premised continued state jurisdiction on the undefined and generic concept of local "registration."

**10.** The F/V Baranof was registered in Alaska under AS 16.05.475, AS 16.05.520, AS 16.05.530, 5 AAC 39.120, and 5 AAC 34.020.

**11.** Further, the Secretary of Commerce supports this interpretation.

**12.** 16 U.S.C. § 1861(c) provides that:
For purposes of this section—
(1) The term "provision of this chapter" includes (A) any regulation or permit issued pursuant to this chapter, and (B) any provision of, or regulation issued pursuant to, any international fishery agreement under which foreign fishing is authorized by section

607 P.2d at 1286. Thus we conclude the F/V Baranof was registered under Alaska law as required by 16 U.S.C. § 1856(a).[11]

## C. JURISDICTION

■ Assuming that a coastal state does have limited regulatory authority in the FCZ, the Baranof asserts that the FCMA provides the federal courts exclusive jurisdiction to enforce this authority. We see no merit in this claim.

■ The FCMA grants the federal district courts "exclusive jurisdiction over any case or controversy arising under the provisions of this chapter." 16 U.S.C. § 1861(d).[12] Thus, the issue is whether this case "arises under" the FCMA. Furthermore, statutes conferring exclusive jurisdiction on the federal district courts are to be strictly construed, and state court jurisdiction is not to be defeated by implication. *See Healy v. Ratta*, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934); *Galveston, H. & S.A.R. Co. v. Wallace*, 223 U.S. 481, 492, 32 S.Ct. 205, 207, 56 L.Ed. 516, 523 (1912).

■ We believe it is self-evident that the present action "arises under" Alaska state law, rather than the FCMA. "[S]ince 1887 it has been settled law that a case may not be removed [because it does not "arise under" federal law] to federal court on the basis of federal defense, including the defense of preemption...." *Franchise Tax Board v. Laborers Vacation Trust*, —— U.S. ——, ——, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420, 433 (1983).[13] While the FCMA might have constituted a defense, the Baranof was charged in the complaint with vio-

1821(b) or (c) of this title, with respect to fishing subject to the exclusive fishery management authority of the United States.

**13.** Precedent as to when a suit "arises under" federal law for purposes of original and removal jurisdiction is interchangeable. 1A J. Moore, Federal Practice, § 0.160[5], at 238 (1983). The same analysis of "arising under" is utilized for the purpose of determining if original federal jurisdiction is exclusive. *Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961).

lation of Alaska law. Thus, this case did not "arise under" the FCMA.

The Baranof attempts to counter this conclusion by arguing that Congress in the FCMA, by two distinct steps: first, voided the states' *Skiriotes* regulatory authority in 16 U.S.C. 1812; and second, restored some state authority in 16 U.S.C. 1856(a). The argument is that Alaska king crab regulatory authority was granted by the FCMA, and thus "arises under" the FCMA.

Even if we were to decide that Congress voided and then restored state power, rather than the more logical interpretation that Congress simply narrowed existing state authority, the Baranof's argument is without merit. The United States Supreme Court has stated:

> How and when a case arises "under the Constitution or laws of the United States" has been much considered ... To bring a case within the [removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. *Starin v. New York*, 115 U.S. 248, 257, 29 L.Ed. 388, 390, 6 S.Ct. 28[31]; *First Nat. Bank v. Williams*, 252 U.S. 504, 512, 64 L.Ed. 690, 692, 40 S.Ct. 372[374]. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. *Ibid.*

> . . . .

> The argument for the respondent proceeds on the assumption that because permission at times is preliminary to action the two are to be classed as one. But the assumption will not stand.... We recur to the test announced in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 77 L.Ed. 903, 53 S.Ct. 447, supra: "The federal nature of the right to be established is decisive-not the source of the authority to establish it." Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 53 L.Ed. 126, 29 S.Ct. 42, supra. With no greater reason can it be said to arise thereunder because permitted thereby.

*Gully v. First National Bank*, 299 U.S. 109, 112, 116, 57 S.Ct. 96, 97, 99, 81 L.Ed. 70, 72, 74 (1936).[14]

Further, courts have considered pragmatic concerns, such as the caseload of the federal judiciary and the extent of the necessity for an expert federal tribunal to handle issues of federal law, in determining whether an action arises under federal law. *See Town of Greenhorn v. Baker County, Oregon*, 596 F.2d 349, 353 (9th Cir.1979); *League to Save Lake Tahoe v. B.J.K. Corp.*, 547 F.2d 1072, 1074 (9th Cir.1976). These practical concerns militate against imposition of a new class of fishery cases upon the federal district courts, where state courts have traditionally interpreted and applied state law.

## III. ADMIRALTY JURISDICTION

■ Article 3, § 2 of the United States Constitution extends the judicial power of the United States to "all cases of admiralty and maritime jurisdiction." The Baranof contends that federal jurisdiction of admiralty cases is exclusive as to *in rem* proceedings.[15]

28 U.S.C. § 1333, the statutory embodiment of U.S. Const. art. 3, § 2, provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

---

**14.** The Supreme Court has also recognized that federal jurisdiction over the location of an event giving rise to a federal cause of action does not restrict a state's jurisdiction over the action where concurrent jurisdiction is otherwise proper. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481–82, 101 S.Ct. 2870, 2876–77, 69 L.Ed.2d 784, 793–94 (1981).

**15.** Both parties agree that this case is an *in rem* admiralty proceeding.

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Thus, the federal courts have exclusive jurisdiction to all cases which do not fit the "saving to suitors" exception. This exception has been interpreted as giving states concurrent admiralty jurisdiction to those causes of action which were allowed under the common law as of 1789, when the predecessor of 28 U.S.C. § 1333 went into effect.[16] *See C.J. Hendry Co. v. Moore,* 318 U.S. 133, 134, 63 S.Ct. 499, 500, 87 L.Ed. 663, 664 (1943); *The Moses Taylor v. Hammons,* 71 U.S. (4 Wall.) 411, 430, 18 L.Ed. 397, 402 (1867). *In rem* admiralty cases between private parties were not allowed at common law, and thus such actions do not fit under the "saving to suitors" clause and must be litigated in federal court. *Madruga v. Superior Court,* 346 U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290, 296 (1954); *Hendry,* 318 U.S. at 137, 63 S.Ct. at 501, 87 L.Ed. at 666; *The Moses Taylor,* 71 U.S. (4 Wall.) at 430, 18 L.Ed. at 402.

However, *in rem* forfeiture actions brought by the Crown to enforce violations of law were allowed at common law. *See Hendry,* 318 U.S. at 137–153, 63 S.Ct. at 501–510, 87 L.Ed. at 666–675; *Smith v.*

*Maryland,* 59 U.S. (18 How.) 71, 76, 15 L.Ed. 269, 271–72 (1855). *Accord* 1 E. Jhrad, A. Sann & B. Chase, Benedict on Admiralty § 124, at 8–13 (7th ed. 1983). Thus, the United States Supreme Court has allowed concurrent state jurisdiction under the "savings to suitors" clause for state forfeiture proceedings. *Id.* In conclusion, the present case fits under the "saving to suitors" clause and hence state jurisdiction is proper.[17]

## IV. JURISDICTION UNDER THE SHIP MORTGAGE ACT OF 1920

▮▮▮▮▮ The Baranof contends that, because a forfeiture decree works *in rem* and thus will impact on preferred ship mortgage holders and other maritime lienors, the Ship Mortgage Act of 1920, 46 U.S.C. §§ 911–984, divests state courts of jurisdiction over vessel forfeitures where such an interest is involved. It is clear that a forfeiture decree extinguishes the rights of secured parties in and to the *res,* subject to remission in the case of innocent, non-negligent claimants. *State v. Rice,* 626 P.2d 104, 114 (Alaska 1981). However, we do not agree that the Ship Mortgage Act of 1920 provides for exclusive federal jurisdiction in an *in rem* forfeiture proceding instituted by a state.

The Ship Mortgage Act of 1920 was enacted to ensure mortgagees a forum for

**16.** Article 3, § 2 of the United States Constitution was originally implemented by the Judiciary Act of 1789, 1 Stat. 76–77. Section 9 of that Act provided in part:

> [T]he district courts ... shall have exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction ... saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it; ...

Although the wording of 28 U.S.C. § 1333 is different, the substance of the provision is the same. *Madruga v. Superior Court,* 346 U.S. 556, 560 n. 12, 74 S.Ct. 298, 300 n. 12, 98 L.Ed. 290, 296 n. 12 (1954).

**17.** The Baranof asserts that the holding in *Hendry* should be limited to when the forfeiture action is based on a violation of state law within the state territorial sea. While the violation in *Hendry* was within the three mile limit, there is nothing in the opinion which limits the holding to these facts. We believe the question of

whether states have regulatory authority outside their territorial sea is a separate issue; one that has been answered affirmatively by the *Skiriotes, Bayside Fish,* and *Bundrant* cases cited *supra.* ·

The district court agreed with this conclusion in its decision denying the Baranof's petition for removal and remanding this case to state court. It said:

> Regardless of the location of the Baranof's seizure or even of the violations upon which the seizure was based, I do not believe the rule of *Hendry* should be restricted to cases where the seizure takes place within the navigable waters of the state. The reasoning in *Hendry* is based upon the authority of the states as successors to certain sovereign powers of the original colonies. While this authority is at its most absolute within the three-mile limit of the states' territorial waters, it also extends beyond that limit as long as it does not come into conflict with federal legislation.

their vessel forfeiture suits. The Act was in response to the Supreme Court's ruling in *Bogart v. The Steamboat John Jay*, 58 U.S. (17 How.) 399, 15 L.Ed. 95 (1854) which held that "a mortgage on a ship ... was not within the admiralty jurisdiction and, thus, the mortgagee could not bring suit *in admiralty*, either in personam on the debt or in rem to foreclose his security interest in the ship." *Port Welcome Cruises, Inc. v. S.S. Bay Belle*, 215 F.Supp. 72, 78 (D.Md.1963). The Ship Mortgage Act of 1920 remedied this situation by providing:

> [A] preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty. Original jurisdiction of all such suits is granted to the district courts of the United States exclusively.

46 U.S.C. § 951. If the present proceeding was a foreclosure action, federal jurisdiction would be exclusive. However, the state has brought a forfeiture action against the F/V Baranof. Thus, 46 U.S.C. § 951 does not apply.

Further, *Madruga v. Superior Court*, 346 U.S. at 561–62, 74 S.Ct. at 301–02, 98 L.Ed. at 296–97 states that federal laws dealing with mortgages of vessels do not bar state jurisdiction where it is otherwise valid; in the present case, by the rule of *Hendry*.[18] The federal rules dealing with priorities of lien holders bind the state courts, but jurisdiction is concurrent. *Madruga*, 346 U.S. at 561, 74 S.Ct. at 301, 98 L.Ed. at 296.

**18.** *Madruga*, 346 U.S. at 560, 74 S.Ct. at 300, 98 L.Ed. at 296 does state that, "[a]dmiralty's jurisdiction is 'exclusive' only as to those maritime causes of action ... *in rem*, ... where a vessel ... is itself treated as the offender ... in order to enforce a lien." However, as noted above, this general rule does not apply to state forfeiture actions, where *Hendry* authorizes concurrent state jurisdiction.

**19.** The State argues that the Baranof's challenge to the constitutionality of the forfeiture statute

## V. PROCEDURAL DUE PROCESS

 The Baranof's final contention is that its due process rights under the United States and Alaska constitutions were violated. It argues that the forfeiture statute under which the vessel was seized, AS 16.05.195, is constitutionally defective in that it does not provide a hearing either prior to or immediately after the seizure of property.[19] Since we hold that the owners of the Baranof were in fact afforded procedural due process, we need not reach the question of the constitutionality of AS 16.05.195. *See Jennings v. Mahoney*, 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971); *F/V American Eagle v. State*, 620 P.2d 657, 667 (Alaska 1980), *appeal dismissed*, 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982).

Due process does not require notice or a hearing prior to seizure by government officials of property allegedly used in an illicit activity. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *American Eagle*, 620 P.2d at 666.

> However, when the seized property is used by its owner in earning a livelihood, notice and an unconditioned opportunity to contest the state's reasons for seizing the property must follow the seizure within days, if not hours, to satisfy due process guarantees even where the government interest in the seizure is urgent. *Stypmann v. City and County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977); *Lee v. Thorton*, 538 F.2d 27 (2d Cir.1976).

*American Eagle*, 620 P.2d at 666–67.

We believe the present case is analogous to *American Eagle*, 620 P.2d at 666–68,

is not properly before this court because the Baranof raised this challenge under Civil Rule 12(b)(6) even though the State's complaint did allege wrongdoing warranting forfeiture, and the legality of the seizure process is not an issue in the complaint. Although technically correct, it seems that this issue could properly be raised in an *in rem* action by motion under 12(b)(2) prior to the Baranof's answer. The issue is treated as properly before the court.

where we upheld the seizure of a king crab fishing vessel. As in *American Eagle*, the seizure of the Baranof was authorized by a judicially approved warrant issued upon probable cause pursuant to Criminal Rule 37. *Id.* at 667. The owners had "an immediate and unqualified right to contest the state's justification for the seizure under Criminal Rule 37(c)." *Id.*[20] "Rather than avail themselves of this opportunity, the owners negotiated the release of the vessel...." *Id.* Finally, in the present case, the State filed a civil complaint on the next working day following the seizure, and the owners were promptly notified.

For the reasons given above, we REVERSE the superior court on the issues of pre-emption and jurisdiction under the FCMA, AFFIRM the trial court on the remaining issues, and REMAND for trial.

MOORE, J., not participating.

---

**20.** Criminal Rule 37(c) provides:

A person aggrieved by an unlawful search and seizure may move the court in the judicial district in which the property was seized or the court in which the property may be used for the return of the property and to suppress for use as evidence anything so obtained on the ground that the property was illegally seized.