MARTINSEN et al. v. MULLANEY et al.

No. 6095–A.

United States District Court
D. Alaska, First Division, Juneau.

July 29, 1949.

A. H. Ziegler, Ketchikan, Alaska, for plaintiff.

J. Gerald Williams, Attorney General, John H. Dimond, Assistant Attorney General, for defendant.

FOLTA, District Judge.

This controversy has been submitted without action, upon an agreed statement of facts, under the provisions of Section 57-5-1 et seq., A.C.L.A.1949.

The questions presented concern the validity, as applied to plaintiffs, of Chapter 66, S.L.A.1949, imposing a license tax of $50 on nonresident and $5 on resident fishermen. Plaintiffs Martinsen and Wick are citizens of the State of Washington who engage in halibut fishing in Alaskan waters and on the high seas, while plaintiff Polar Fisheries is a domestic corporation engaged in buying, processing and shipping halibut to foreign and domestic markets outside of the Territory.

The plaintiffs contend:

(1) That the Territory cannot tax the taking of halibut from the high seas or prohibit the purchase thereof from unlicensed fishermen;

(2) That the statute unreasonably discriminates against nonresident fishermen because it imposes a tax of $50 on them as against $5 for resident fishermen; and

(3) That the act does not apply equally to all nonresidents because aliens—that is, citizens of Canada—are allowed by virtue of the act of June 19, 1948, 62 Stat. 533, 46 U.S.C.A. § 251 note, to dispose of their catches of halibut in ports of Alaska upon a compliance with the United States Customs laws.

Section 1 of the Act defines a fisherman as "any person who fishes commercially for, takes or attempts to take salmon, halibut, * * * or other fishery resources of Alaska, and shall include every individual aboard boats operated for fishing purposes who participates directly or indirectly in the taking of the raw fishery product above mentioned whether such participation be on shares or as an employee or otherwise. The term 'fishermen' shall also include trap watchmen or others engaged in operating fish traps as well as crews of tenders or other floating equipment used in handling of fish".

Section 2 defines a resident as "any citizen who has resided in the Territory for 12 months immediately preceding application for such license and shall have been a bona fide inhabitant of Alaska for at least six months during each calendar year thereafter, and who maintains his place of abode in Alaska"; and a nonresident as "a citizen who has not resided in Alaska for the 12 months immediately preceding application for license or who maintains his principal business or place of abode outside of the Territory."

Section 5 prohibits the purchase of fish from an unlicensed fisherman.

The act is clearly a revenue measure. Indeed, the Territory is prohibited by Sec-

tion 3 of the Organic Act, 37 Stat. 512, 48 U.S.C.A. § 24, from regulating the fisheries. Congress has regulated halibut fisheries since June 7, 1924, 43 Stat. 648, and the salmon fisheries of Alaska since 1889, 25 Stat. 1009. The present law regulating the salmon fisheries may be found in 48 U.S.C.A. § 221 et seq., and that regulating the halibut fisheries in 16 U.S.C.A. § 772 et seq.

█ It is admitted that the act has been construed by the Territory as applicable to fishing on the high seas and that the defendants' officers are attempting to enforce the act in accordance therewith. Plaintiffs contend that the act is not applicable to fishing on the high seas because the jurisdiction of the Territory does not extend beyond the three mile limit from shore. However, it appears reasonably clear that the Territory does have the power to impose a tax on the privilege of fishing on the high seas by its residents, Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 1093, 85 L.Ed. 1552, and if the tax in this instance had been imposed on the privilege of engaging in fishing, as distinguished from actual fishing, then acts preliminary to or connected with actual fishing such as the operation in territorial waters of a vessel outfitted for fishing, between a local port and the fishing grounds, or vice versa with her catch, would have sufficed to bring within its purview all those who engaged in such activities, even though they also engaged in fishing on the high seas. Likewise, had the act expressly included fishing on the high seas, it would have sufficed to bring residents within its scope. But this was not done and hence in the absence of express language to that effect, it must be held that fishing on the high seas is not within the act and that its applicability is limited to waters within the jurisdiction of the Territory.

█ However, this interpretation does not dispose of the question because the definition of fisherman in Section 1 is not limited to those who fish, but includes everyone who watches or operates a fish trap or is a member of the crew of a tender or other floating equipment *used in handling fish.* (Emphasis supplied.) It appears reasonably clear that it was the intention of the Legislature to comprehend all those classes identified or connected with the maritime aspect of the industry —that is, the taking, handling and delivery of the fish on the grounds, as distinguished from those engaged in shore operations, such as processing, canning and exporting. Thus, those engaged in operating fish traps or on tenders or scows used in connection with brailing traps or taking delivery from fishermen on the fishing grounds, as well as those working in floating canneries, are engaged in fishing or employed on "floating equipment used in the handling of fish".

█ Manifestly, when a vessel loaded with halibut taken from the high seas, whether by residents or nonresidents, enters territorial waters and unloads her catch, she falls into the category of "floating equipment used in handling fish" and those employed on her become subject to the taxing power of the Territory.

█ Plaintiffs further argue that the term "or other fishery resources of Alaska" in Section 1 clearly shows that the Legislature acted under a misconception as to the ownership of the halibut fisheries and that, since they are owned by the United States rather than the Territory, the act is invalid as an attempt to tax a subject within the federal sphere. Aside from the fact that the term is merely descriptive and clearly was not intended as an assertion of ownership or proprietary interest, the act is not in conflict with any law of the United States or an infringement of its rights as proprietor.

█ I conclude, therefore, that the crew of a vessel which enters territorial waters from other jurisdictions, enroute to fishing grounds on the high seas, or enroute with her catch taken from the high seas to a Canadian port or the State of Washington, is not subject to the tax not only because no taxable event takes place within the jurisdiction of the Territory but because the vessel would be engaged in foreign or interstate commerce. On the other hand,

when such a vessel catches or unloads halibut within the territorial jurisdiction of Alaska, the crew becomes subject to the taxing power thereof regardless of whether the halibut is taken from territorial waters or the high seas.

■ But although the handling of fish in territorial waters by nonresidents is clearly within the taxing power of the Territory, the question remains whether the imposition of a tax of $50 on nonresidents, as against a tax of $5 on residents, is valid. Plaintiffs' contention that the discrimination is invalid under Article 4, Section 2, of the Constitution and the Fourteenth Amendment cannot be sustained because neither is applicable to the Territory. Cf. Alaska Fish Salting & By-Products Co. v. Smith, 255 U.S. 44, 49, 41 S.Ct. 219, 65 L.Ed. 489; Haavik v. Alaska Packers Association, 263 U.S. 510, 44 S.Ct. 177, 68 L.Ed. 414; McFadden v. Blocker, 3 Ind.L. 224, 54 S.W. 873, 58 L.R.A. 894; Duchay v. Acacia Mutual Life Insurance Co., 70 App. D.C. 245, 105 F.2d 768, 775, 124 A.L.R. 1268; South Porto Rico Sugar Co. v. Buscaglia, 1 Cir., 154 F.2d 96, 101; Cascaden v. Wimbish, 9 Cir., 161 F. 241, 244; Freeman v. Smith, 8 Alaska 229, 233. It was undoubtedly on this ground that heavier license taxes were sustained in Haavik v. Alaska Packers Association, supra, and Anderson v. Smith, 9 Cir., 71 F.2d 493. But in neither case was the Court's attention called to the Civil Rights Act. One section thereof, R.S. § 1977, 8 U.S.C.A. § 41, which is expressly made applicable to the territories, provides that:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

■ The rights protected in the first Civil Rights Act of 1866 were incorporated into the Fourteenth Amendment which was adopted in 1868 in order to remove doubts as to the constitutionality of the Act, and the last clause of the section quoted was added in 1870, 16 Stat. 144. Although the tax here involved would clearly appear to be within the literal prohibition of that clause, its meaning must nevertheless be determined from the decisions of the Supreme Court construing the Fourteenth Amendment itself, the pertinent provisions of which read as follows, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." for the Act cannot be given a broader scope than the amendment on which it is based except, of course, under the plenary power of Congress over the territories. In Colgate v. Harvey, 296 U.S. 404, Justice Stone, in his dissenting opinion, pages 444, 445, 56 S.Ct. 252, at page 266, 80 L.Ed. 299, 102 A.L.R. 54, had occasion to point out that "Since the adoption of the Fourteenth Amendment at least 44 cases (citing them) have been brought to this Court in which state statutes have been assailed as infringements of the privileges and immunities clause. Until today, none has held that state legislation infringed that clause", and from what was later said in Madden v. Kentucky, 309 U.S. 83, 90–93, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383, overruling Colgate v. Harvey, it is clear that the right of a nonresident to handle halibut in Alaska is not a right of national citizenship, State v. Catholic, 75 Or. 367, 147 P. 372, 375, Ann.Cas. 1917B, 913, and, hence, the case is not governed by the privileges and immunities clause of the Fourteenth Amendment but rather by the equal protection clause. Although the equal protection clause does not prohibit the classification of persons for taxation, such classification must not be unreasonable or arbitrary and, moreover, must be based on differences having a fair and substantial relation to the object of the legislation

(which in this case is purely to raise revenue), so that all persons similarly circumstanced shall be treated alike.

The stipulation contains no facts tending to justify the discrimination in this case on any ground, such as the difficulty of collecting the tax from nonresidents or showing that, considering the tax scheme of the Territory or the distribution of the tax burden, the discrimination is more apparent than real, and of course none can be made on the ground that it is necessary for the conservation of the halibut fisheries because, as has already been pointed out, the Territory is not empowered to regulate the fisheries in territorial waters or on the high seas. In this situation the comment of the Supreme Court in Colgate v. Harvey, supra, 296 U.S. at page 424, 56 S.Ct. at page 256, 80 L.Ed. 299, 102 A.L.R. 54, would appear to be particularly apt: "Upon the face of the statute the classification is based upon a difference having no substantial or fair relation to the object of the act, which, so far as this question is concerned, simply is to secure revenue. The statute itself suggests no other public purpose which will be served by the exemption."

█ If there were a showing by stipulation of facts or otherwise from which it would appear that the discrimination is not clearly unreasonable or that at least it is shrouded in doubt, in which event, the rule is well-settled that constitutionality would have to be presumed, cf. Richmond Linen Supply Co. v. Lynchburg, 160 Va. 644, 169 S.E. 554, affirmed National Linen Service Corp. v. City of Lynchburg, 291 U.S. 641, 54 S.Ct. 437, 78 L.Ed. 1039, the validity of this act would have to be upheld, but in the absence thereof I am constrained to hold that Chapter 66, S.L.A.1949, so far as it imposes a higher tax on nonresidents employed or engaged in handling halibut in Alaska, contravenes the Civil Rights Act and, hence, is invalid. Takahashi v. Fish & Game Commission, 334 U.S. 410, 419-420, 68 S.Ct. 1138, 92 L.Ed. 1478; Bethlehem Motors v. Flynt, 256 U.S. 421, 41 S.Ct. 571, 65 L.Ed. 1029; cf. Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1157, 92 L.Ed. 1460.