Charles B. SIMPLER, Appellant,

v.

STATE of Alaska, COMMERCIAL FISH-
ERIES ENTRY COMMISSION, John
Williams, Burke Riley, Robert Simon,
Commissioners of Alaska Commercial
Fisheries Entry Commission, Appellees.

No. 6406.

Supreme Court of Alaska.

Nov. 14, 1986.

Paul D. Kelly, Strachan & Dahl, Kelly &
Patterson, Anchorage, for appellant.

John B. Gaguine, Juneau, Margot O.
Knuth, Asst. Attys. Gen., Harold M.
Brown, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., BURKE,
MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case is before us for the second
time. Previously we remanded it to the
Commercial Fisheries Entry Commission
(CFEC) for further proceedings to deter-
mine several specific issues. Charles Sim-
pler (Simpler) now appeals from one such
determination that he was ineligible to ap-
ply for a limited entry permit in the Prince
William Sound herring fishery. We affirm.

### I. FACTS AND PROCEEDINGS

Simpler is a long-time Prince William
Sound salmon and herring fisherman. In
1975, he obtained permanent entry permits
to operate gear in the Prince William
Sound salmon fisheries. When the herring
fishery was limited in 1977, however, Sim-
pler did not then apply for a permit. Sev-
eral months after this court issued the
opinion in *State, CFEC v. Templeton,* 598
P.2d 77 (Alaska 1979), Simpler did file an

application, which was denied as untimely filed. He requested a hearing on the denial. The CFEC denied this request as well as a request for reconsideration. Simpler appealed to the superior court, which affirmed the CFEC's decision.

Earlier before this court, both parties focused primarily on whether Simpler was "misadvised" by a CFEC agent and whether this misadvice was the reason he did not timely file an application. For purposes of that appeal, the parties stipulated that Simpler was eligible to apply.

We remanded the case to the superior court with instructions to remand it to the CFEC to answer the following questions:

1. Was Charles B. Simpler eligible to apply for a limited entry permit during the initial application period for the Prince William Sound purse seine herring fishery?

2. Why did Charles B. Simpler fail to file an application? Was his failure to file the result of his disgust with the system and his view that the herring fishery would be closed, the result of advice given him by a CFEC agent, or by a combination of the two?

3. What specifically was Charles B. Simpler told by a CFEC agent during the initial application period?

1. The first issue is dispositive and therefore we do not address the second.

2. 20 AAC 05.664 (eff. 2/25/77) provides in relevant part:

POINT SYSTEM FOR SOUTHEASTERN AND PRINCE WILLIAM SOUND ROE HERRING PURSE SEINE AND COOK INLET COMBINED ROE HERRING AND HERRING PURSE SEINE FISHERIES.
(a) Past Participation. Points will be awarded to an applicant for past participation in the fishery applied for based on the following:

| (1) Past Participation as a Herring Purse Seine Interim-Use Permit Holder | Adm. Areas A–1 and H | Adm. Area E–1 |
|---|---|---|
| YEAR | POINTS | POINTS |
| 1976 | 2 | 2 |
| 1975 | 2 | 1 |
| 1974 | 1 | 1 |
| Maximum Allowable Award | 5 | 4 |

. . . .

The CFEC concluded that Simpler was ineligible to apply for a limited entry permit because he held neither a gear license nor an interim-use permit for the Prince William Sound herring fishery. It stated it was unable to discern from the record why Simpler failed to file an application.

## II. WAS SIMPLER ELIGIBLE TO APPLY FOR A LIMITED ENTRY PERMIT FOR THE PRINCE WILLIAM SOUND HERRING FISHERY?

The CFEC found that Simpler had neither an interim-use permit nor the appropriate gear license for the Prince William Sound herring fishery, thus he was not eligible to apply for a limited entry permit for that fishery. Simpler argues that the CFEC regulation requiring an interim-use permit exceeds the scope of its statutory authority and that he did indeed possess the appropriate gear license.[1]

Simpler concedes that he did not possess an interim-use permit as required by 20 AAC 05.664.[2] He argues that since the version of AS 16.43.260(a)[3] in effect during the initial application period required participation as a gear license holder and did not mention interim-use permits, the re-

(3) "Past participation," for purposes of this section, means
(A) the commercial taking of the herring resource in herring administrative areas A–1, E–1 or H with a herring purse seine, interim-use permit and appropriate licenses; or
(B) being on the fishing grounds in herring administrative areas A–1, E–1 or H, with the appropriate vessel, gear, licenses, and interim-use permit with the intention of taking the herring resource during the time the season was open and the herring resource was harvested.
. . . .

3. Former AS 16.43.260(a) provided:
*Application for Initial Issue of Entry Permits.*
(a) The commission shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under AS 16.05.536–16.05.670 before the qualification date established in (d) or (e) of this section.
(Amended 1981).

quirement in 20 AAC 05.664 is "violative of the statutory scheme for limited entry."

This court reviews administrative regulations by a two-step procedure. First, we decide "whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency." *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971). Next, we determine "whether the regulation is reasonable and not arbitrary." *Id.* We will not substitute our judgment as to the content of the rule if it meets these standards. *Id.* at 911 n. 23.

The statutory provisions conferring rule-making authority on the CFEC are AS 16.-43.100–110. Portions of these statutes indicate that the legislature intended to give the CFEC broad authority to promulgate such regulations as 20 AAC 05.664. On a general level, the CFEC is directed to "regulate entry into the commercial fisheries for all fishery resources in the state," AS 16.43.100(a)(1), and is authorized to "adopt regulations, consistent with law, necessary or proper in the exercise of its powers or for the performance of its duties." AS 16.43.110(a). Specifically, the CFEC is to "designate, when necessary to accomplish the purposes of this chapter, particular species for which separate interim-use permits or entry permits will be issued," AS 16.43.-100(a)(5), and to "issue interim-use permits as provided in AS 16.43.210 and 16.43.220." AS 16.43.100(a)(8).

Simpler points out that former AS 16.43.-260(a) did not mention interim-use permits as an eligibility requirement. He argues that the CFEC cannot impose additional threshold requirements not mentioned in the statute, citing *State, CFEC v. Templeton*, 598 P.2d 77 (Alaska 1979). In *Templeton*, however, we were reviewing the interpretation of a CFEC regulation, not deciding whether a regulation was authorized by statute. *Id.* at 81. The standard of review is different when an administrative body is interpreting, rather than promulgating, rules. *See Kelly v. Zamarello*, 486 P.2d at 916.

We have recently stated that the Limited Entry Act "effectively transfers much of the legislature's rulemaking authority to the Commercial Fisheries Entry Commission." *Kalmakoff v. State, CFEC*, 693 P.2d 844, 851 (Alaska 1985). We pointed out that the "statutes are general, but the regulations are necessarily specific; and it is clear that the legislature intended to give the Commission considerable discretion in promulgating them." *Id.*

Furthermore, we must consider other provisions of the Limited Entry Act together with those specifically granting rulemaking authority. 2A Sutherland Stat.Const. § 47.05 (4th Ed.1984). AS 16.43.140(a) states: "After January 1, 1974, a' person may not operate gear in the commercial taking of fishery resources without a valid entry permit *or a valid interim-use permit* issued by the commission." (Emphasis added).

Before the legislature enacted the limited entry statute, interim-use permits did not exist. The issuance of interim-use permits was to be the first phase in the limited entry scheme. *Rose v. CFEC*, 647 P.2d 154, 156 n. 1 (Alaska 1982). After January 1, 1974, persons fishing commercially were required to have either a limited entry permit or an interim-use permit. AS 16.43.-140(a). In fisheries which were to be limited immediately, the requirement of a gear license as stated in AS 16.43.260(a) served the statutory purpose of allocating entry permits according to the degree of hardship a person would suffer if excluded from the fishery. *See CFEC v. Apokedak*, 606 P.2d 1255, 1266 (Alaska 1980) (*Apokedak I*). Since interim-use permits had not previously existed, they could not be considered as an indicator of hardship.

In contrast, some fisheries were not immediately limited. For example, the herring fishery in this case was not limited until 1977. Interim-use permits were issued in the period between the enactment of the limited entry scheme and the actual limiting of the herring fishery.

Given that those participating in the fishery were required to have an interim-use permit as well as the appropriate gear license, AS 16.43.140(a), and that the eligibility requirement of AS 16.43.260(a) was intended to segregate hardship from non-hardship cases, *Apokedak I*, 606 P.2d at 1266, it appears consistent with the purposes of the Act for the CFEC to require an interim-use permit as an indicator of participation, and thus of hardship.

Finally, the Alaska legislature in 1981 amended the statute upon which Simpler relies. AS 16.43.260(a) now provides:

> The commission shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under AS 16.05.536–16.05.670 *and interim-use permits* under AS 16.43.210(a) before the qualification date established in (d) or (e) of this section.

(Emphasis added). This amendment "may be regarded as a legislative interpretation or clarification of the pre-existing law." *City of Anchorage v. Thomas*, 624 P.2d 271, 273 (Alaska 1981). The legislature could not have considered interim-use permits as an indicator of participation when the Limited Entry Act was originally drafted because interim-use permits did not then exist. Since interim-use permits were required starting in 1974 even in unlimited fisheries, they came to be a reliable indicator of participation.

The 1981 amendment to AS 16.43.260(a) can be also seen as reflecting legislative recognition that only those with both the appropriate gear license and interim-use permit were fishing lawfully during the period between original enactment of the statute and limitation in a given fishery. The requirement of an interim-use permit was made explicit to clarify that the legislature intended to establish eligibility based on lawful participation.

We conclude that the Commission's regulation is consistent with and reasonably necessary to carry out the purposes of the Limited Entry Act provisions which confer rulemaking authority on the CFEC. *See Kelly v. Zamarello*, 486 P.2d at 911.

Next we must determine whether the regulation is reasonable and not arbitrary. *Id.*

In previous cases involving the Limited Entry Act, we have stressed the importance of the permit applicant's status in the fishing industry. *See, e.g., Rose v. CFEC*, 647 P.2d 154, 159 (Alaska 1982); *Apokedak I*, 606 P.2d at 1263, 1266. In order to fulfill the statutory purpose of preventing unjust discrimination, one important consideration is the loss to be suffered by exclusion from the fishery. *Apokedak I*, 606 P.2d at 1266. In *Apokedak I*, we held that the eligibility requirement of holding a gear license was valid since only previous gear license holders would lose a privilege they had enjoyed previously. We noted that non-gear licensees who had participated in a fishery in other capacities were still entitled to participate in those capacities. While these participants were deprived of some opportunities to change their status, their loss was not as great as those who might have lost a previously acquired status. *Id.*

A similar analysis is appropriate in the case of the requirement at issue here. Simpler concedes that he did not have an interim-use permit, yet argues that he was not fishing illegally because he was working with a partner who held an interim-use permit and who was present when fish were being caught. He points to AS 16.43.-140(b), which provides:

> A permit is not required of a crewmember or other person assisting in the operation of a unit of gear engaged in the commercial taking of fishery resources as long as the holder of the entry permit or the interim-use permit for that particular unit of gear is at all times present and actively engaged in the operation of the gear.

By arguing that he falls under this exception, Simpler concedes that he was merely *assisting* in the operation of commercial gear. The CFEC's findings support his concession.

During the combine[d] operation in each of the years 1974, 1975 and 1976, it was Mr. Simpler's responsibility to carry the aviation gas to fuel the airplane they used to spot herring concentrations and to provide general assistance in the purse seine fishery. This assistance took the form of helping to hold up the seine on a big set, tendering fish to a processor for his two gear operator partners, and in one instance, keeping the vessel actually operating the purse seine gear from turning over because of the weight of the catch in the set.

(Citation and footnote omitted). The CFEC found that in view of the functions Simpler performed, he was correct in asserting that he did not need an interim-use permit.[4]

 Nothing in the statutory scheme prohibits Simpler from performing in the same capacity that he previously did by assisting his partners in the operation of gear. He can still come within the exception provided in AS 16.43.140(b). While he may be precluded from upgrading his status as a participant in the herring fishery,

he has not suffered any loss of a status previously held during the relevant measuring years.

As applied in this case, the regulation is reasonable and not arbitrary. *See Kelly v. Zamarello,* 486 P.2d at 911.

### III. CONCLUSION

Simpler was not eligible to apply for a limited entry permit in the Prince William Sound herring fishery. The eligibility requirement of an interim-use permit as contained in 20 AAC 05.664 is within the scope of the CFEC's rulemaking authority. Simpler admits that he did not have an interim-use permit. He was therefore not eligible to apply.

AFFIRMED.

---

4. The CFEC surmised that Simpler was asserting partnership status since he had assisted his partners who held interim-use permits. He does not argue this point before us. A partnership eligibility claim would be foreclosed by

*CFEC v. Apokedak,* 680 P.2d 486, 488 (Alaska 1984).