**STATE of Alaska, Appellant,**

v.

**John DUPIER, Rodman E. Miller, and Philip J. Twohy III, Appellees.**

**Nos.  A–8270, A–8271, A–8272.**

Court of Appeals of Alaska.

Aug. 1, 2003.

---

Jon K. Goltz, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Melvin M. Stephens II, Kodiak, for Appellee Miller, and Michael Hough, Homer, for Appellees Dupier and Twohy.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

John Dupier, Rodman E. Miller, and Philip J. Twohy hold federal permits to fish for halibut and sablefish off the coast of Alaska. The State charged them with violating state law by landing their fish in Alaska without first obtaining an interim-use or landing permit from the Commercial Fisheries Entry Commission (CFEC).[1] The district court dismissed the charges, and the State appealed. For the reasons set out below, we agree with the district court.

*Summary of our decision*

The CFEC was created to regulate participation in Alaska's commercial fisheries. The primary task of the CFEC is to evaluate whether the number of fishers in a particular fishery should be limited to conserve the fishery resource and promote the health of the fishing industry.

Alaska statutes authorize the CFEC to issue three types of fishing permits to commercial fishers. The CFEC issues two of these permits—the limited entry permit and the interim-use permit—to regulate fishing in fisheries subject to limited entry by the CFEC (*i.e.*, all state-regulated fisheries in which the number of participants is currently limited or could be limited in the future). Limited entry permits (as their name im-

plies) allow selected fishers to participate in fisheries in which the CFEC has limited access. Interim-use permits, on the other hand, are issued to *all* qualified fishers who wish to participate in a fishery the CFEC has not limited. This interim-use permit allows the CFEC to prevent fishers who do not have the appropriate commercial fishing gear from operating in fisheries in which entry has not been limited; it also allows the CFEC to gather data on those fisheries to determine if entry should be limited in the future. Thus, as the term "interim-use" suggests,[2] the legislature created interim-use permits so the CFEC could regulate fisheries that might later be subject to limited entry.

The third type of permit—the landing permit—was created to give the state some control over the activities of fishers who participate in federally controlled fisheries but wish to land their catch in Alaska. Unlike the limited entry and interim-use permits, landing permits, although legislatively authorized, have never been used. The Department of Fish and Game has never established eligibility standards for these permits, nor authorized the CFEC to issue the permits. Thus, the Department of Fish and Game never took the legislatively required steps to regulate the landings by fishers who fish in federally controlled fisheries but want to land their catch in Alaska. To fill this void in the halibut and sablefish fisheries, the CFEC began requiring holders of federal permits to fish in those fisheries to obtain state interim-use permits before landing their catch in Alaska, even though interim-use permits were created for a different purpose.[3]

The appellees in this case are fishers who participated in the federally controlled halibut and sablefish fisheries and landed their catch in Alaska. The State alleged that their conduct was illegal because they did not have an interim-use or landing permit. District Court Judge M. Francis Neville dismissed the charges because she found that the CFEC had no authority to require fishers operating exclusively in federal waters to

---

1.  20 AAC 05.110(c); AS 16.05.675.

2.  *Webster's New World College Dictionary* (4th ed.2002) defines "interim" as "the period of time between; meantime."

3.  *See* 20 AAC 05.110(c).

obtain interim-use permits. She also held that the appellees could not be penalized for failing to get landing permits because the CFEC had never issued such permits. We agree with Judge Neville's conclusions and therefore affirm her decision.

The CFEC is only authorized to issue interim-use permits to fishers participating in fisheries that are potentially subject to limited entry by the CFEC. The Alaska Legislature created the landing permit to regulate the landing of fish by fishers who participate in federally controlled fisheries but who wish to land their catch in Alaska. While the CFEC's desire to require such fishers to obtain an interim-use permit in place of the unobtainable landing permit is understandable, in doing so the CFEC exceeded its authority.

*Discussion*

*Background*

Resolution of this appeal requires some review of the federal and state laws governing fishing off the coast of Alaska.

The Alaska legislature created the CFEC in 1973 to "regulate entry into the commercial fisheries for all fishery resources in the state."[4] The original impetus for the CFEC was to limit participation in the salmon fishery; however, the CFEC was given authority to limit entry in other commercial fisheries

when necessary to achieve sustained yield of the fishery resource and the economic health of the fishing industry.[5] The legislature directed the CFEC to limit entry in "distressed" fisheries[6] and fisheries that, while not distressed, had reached levels of participation that required limitation to achieve the act's purposes.[7] As noted above, for fisheries in which participation was to be limited immediately, the CFEC was directed to issue entry permits based on certain criteria.[8] For fisheries in which participation was not immediately limited, the CFEC was to issue interim-use permits.[9] Those permits were unlimited in number and were to be issued to "all applicants who can establish their present ability to participate actively in the fishery."[10] After January 1, 1974, no person could operate gear in the commercial taking of fish "without a valid entry permit or a valid interim-use permit issued by the commission."[11]

The federal government has also acted to regulate fisheries off the coast of Alaska. In 1976, Congress enacted the Magnuson–Fishery Conservation and Management Act (subsequently renamed the Magnuson Stevens Fishery Conservation and Management Act[12]) to address over-fishing in areas adjacent to territorial waters, particularly by foreign fishing boats.[13] The act established a 200–mile "fishery conservation zone"—now

---

**4.** AS 16.43.100(a)(1); AS 16.43.020(a).

**5.** *See* Governor William A. Egan's January 10, 1973, transmittal letter for legislation to regulate entry in Alaska's commercial fisheries, at 22 (Senate Resources Committee file on H.B. 126, 1973–74) ("To summarize, this bill provides a means for regulating entry into Alaska's commercial fisheries. While it has been designed to have broad applicability, it is directed initially at limiting entry into the State's salmon fisheries because the need for effective action there is greatest."). The House Resources Committee initially introduced H.B. 126 to regulate participation in the salmon fishery. H.B. 126, 8th Leg., 1st Sess. (1973); 1973 House Journal 504. A committee substitute was introduced that allowed the CFEC to designate the specific fishery resources to be subject to limited entry. C.S.H.B. 126, 8th Leg., 1st Sess. (1973); 1973 House Journal 504. This enabled the CFEC "to extend limited entry to other fisheries ... without additional legislation." 1973 House Journal 504. That change remained in the final version of the bill. *See*

*Estate of Lewis v. State,* 892 P.2d 175, 180 n. 10 (Alaska 1995); *see also* AS 16.43.010; AS 16.43.100(a)(1).

**6.** AS 16.43.230; AS 16.43.240(a).

**7.** AS 16.43.240(b).

**8.** AS 16.43.250(a).

**9.** AS 16.43.140(a); AS 16.43.210(a).

**10.** AS 16.43.210(a).

**11.** AS 16.43.140(a).

**12.** 62 Fed.Reg.2047 (January 15, 1997).

**13.** *See State v. F/V Baranof,* 677 P.2d 1245, 1248–49 (Alaska 1984). The regulations governing the Gulf of Alaska and adjoining areas are codified at 50 C.F.R. § 679.

called the "exclusive economic zone" (EEZ) [14] —over which the federal government exercises fishery management authority.[15] The halibut fishery is governed by both the Magnuson–Stevens Act and a convention between the United States and Canada that is implemented in the United States by the Northern Pacific Halibut Act of 1982.[16] The Magnuson–Stevens Act applies almost exclusively to the EEZ.[17] The Halibut Act applies to all "convention waters," including waters "within and seaward of the territorial sea or internal waters" of the United States.[18] Because the Halibut Act governs fishing in Alaska's territorial waters, the Board of Fisheries has issued a regulation barring any person from commercially harvesting or possessing halibut in a manner inconsistent with that act.[19]

At the time these federal laws went into effect, AS 16.05.680 made it unlawful for any person in Alaska to purchase fish from a fisher who did not have a state license or permit to fish.[20] (In 1982, the legislature also enacted AS 16.10.265 and AS 16.10.267, which, respectively, made it unlawful for fish processors to buy fish from fishers who did not hold a limited entry or interim-use permit, and for fishers to sell fish without a limited entry or interim-use permit.) Apparently, there were few difficulties enforcing these state laws because most holders of permits to operate in federally managed fisheries also had state permits.[21] However, in 1984 a fisher who had a permit for the federally regulated high seas salmon troll fishery but no state permit decided to land his catch in Alaska instead of Washington.[22] When told he could not land his fish in Alaska without a state permit, he threatened to sue the state, arguing—apparently with the backing of the federal government—that federal law authorized him to land in Alaska.[23] To avoid a lawsuit,[24] the legislature enacted AS 16.05.675,[25] which requires a person who

14. *See* Presidential Proclamation No. 5030, 48 Fed.Reg. 10605 (March 14, 1983); *see also* Pub.L. 102–251, § 302(a)(1) & (b) (1992).

15. *See F/V Baranof,* 677 P.2d at 1249 (citing 16 U.S.C. §§ 1811, 1812).

16. *See* 16 U.S.C. §§ 773 *et seq.; Convention for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea,* March 2, 1953, U.S.-Can., 5 U.S.T.1954 and *Protocol Amending the Convention Between the United States and Canada for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea,* March 29, 1979, U.S.-Can., 32 U.S.T. 2483. Congress has regulated the halibut fishery in some form since 1924. *See Martinsen v. Mullaney,* 85 F.Supp. 76, 78, 12 Alaska 455, 459 (D.C.Alaska 1949) (citing 43 Stat. 648).

17. *See* 16 U.S.C. §§ 1811, 1812; *United States v. Ertsgaard,* 222 F.3d 615, 617 n. 4 (9th Cir.2000).

18. *See Ertsgaard,* 222 F.3d at 617 & n. 4. (citing 16 U.S.C. § 773(d) & *Protocol Amending the Convention Between the United States and Canada for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea,* 32 U.S.T. at 2487).

19. *See* 5 AAC 28.092.

20. *See* ch. 94, art. III, § 10, SLA 1959 (making it unlawful to purchase fish from a person who has no state license); ch. 105, § 11, SLA 1977 (amending that law to make it unlawful to purchase fish from a person who does not hold a permit under AS 16.43).

21. *See* letter from Norman C. Gorsuch, Attorney General, to Governor Bill Sheffield on C.S.H.B. 376 (June 21, 1984); notes from interview with John Williams of the CFEC (in Senate Resources Committee file on H.B. 376, 1983–84).

22. *See id.*

23. *See id.*

24. *See id.; see also* Committee Minutes, House Resources Committee hearing on H.B. 376 (May 23, 1983) (comments by Sharman Haley, Special Assistant, CFEC) and Senate Resources Committee hearing on C.S.H.B. 376 (March 27, 1984) (comments by Haley of the CFEC and Norm Cohen, Special Assistant, Department of Fish and Game).

25. AS 16.05.675 provides:

Landing permits. (a) A person who does not hold a limited entry permit or interim-use permit issued under AS 16.43 may not deliver or land fish in the state unless the person

(1) holds a valid federal permit to operate commercial fishing gear in the fishery conservation zone; and

(2) has been issued a landing permit by the Commercial Fisheries Entry Commission.

(b) The commissioner may by regulation establish eligibility requirements for the issuance of a landing permit.

(c) The commissioner may authorize the Commercial Fisheries Entry Commission to issue landing permits for a fishery if the commissioner has made a written finding that the

has a federal permit to fish in the EEZ but no state entry or interim-use permit to get a "landing permit" from the CFEC before landing fish in the state. The statute gave the commissioner of Fish and Game discretion to set up eligibility standards for landing permits and to authorize the CFEC to issue permits for a particular fishery if the Department found in writing that doing so would be consistent with state resource conservation and management goals.[26]

The history of this legislation reveals two rationales for why the legislature required the commissioner of Fish and Game to affirmatively authorize landing permits, instead of simply authorizing the permits and directing the Department to issue eligibility standards. First, although the legislation was initiated to accommodate one fisher with a federal permit who wished to land his catch in Alaska, the unsettled boundaries of state and federal authority had broader implications.[27] The CFEC cautioned legislators about enforcement problems that might arise in other fisheries, particularly the crab fishery, if fishers with federal permits were allowed to land their catch in Alaska.[28] The legislature was warned that it would be difficult to prevent crab fishers with federal permits from fishing illegally in state waters en route to landing their catch in Alaska if participation in the state crab fishery were limited.[29] Sharman Haley, a special assistant with the CFEC, offered the House Resources Committee an additional reason for

> issuance of landing permits for that fishery is consistent with state resource conservation and management goals.

**26.** AS 16.05.675(c).

**27.** *See* Committee Minutes, House Resources Committee hearing on H.B. 376 (May 23, 1983) (comments by Haley at CFEC); letter from Gorsuch, Attorney General, to Governor Sheffield on C.S.H.B. 376 (June 21, 1984); notes of interview with Williams of the CFEC (Senate Resources Committee file on H.B. 376).

**28.** *See id.*

**29.** *See id.*

**30.** *See* Committee Minutes, House Resources Committee hearing on H.B. 376 (May 23, 1983) (comments by Haley at CFEC).

making landing permits contingent on an affirmative act by Fish and Game: "so that a policy decision [could] be made at a later stage in the negotiations with the Federal government as to whether or not the State will fold on this issue, and issue these [salmon] trollers permits, or whether the [CFEC] will contest the Federal government's right to preempt our landing laws."[30] For reasons that are not explained in the record, the Department of Fish and Game never issued regulations under AS 16.05.675. Moreover, the State does not dispute Judge Neville's finding in this case that the CFEC has never issued landing permits.

In 1996, the federal government limited entry in the sablefish and halibut fisheries in the Gulf of Alaska and portions of the Bering Sea and the Aleutian Island area.[31] The regulations provide that any person (including a corporation or other entity) that owned or leased a vessel that made fixed gear landings of halibut or sablefish in regulated waters in 1988, 1989, or 1990 qualified for a federal permit.[32] That person was issued "quota shares" in proportion to their legal landings of halibut or sablefish during specified years.[33] Each year, that person's individual fishing quota is calculated by multiplying that quota share by the annual allowable catch.[34] Subject to some restrictions, the regulations allow quota shares and individual fishing quotas to be sold, leased, or otherwise transferred.[35]

**31.** *See* 50 C.F.R. § 679.1; *see also* Alison Rieser, *Prescriptions for the Commons: Environmental Scholarship and the Fishing Quotas Debate,* 23 Harv. Envtl. L.Rev. 393, 412–14 (1999). Authority to regulate these fisheries is found in the Magnuson–Stevens Act, 16 U.S.C. §§ 1801 *et. seq.* and the Halibut Act, 16 U.S.C. §§ 773 *et seq.* *See* 50 C.F.R. § 679.

**32.** 50 C.F.R. § 679.40(a)(3)(i); *see generally Foss v. National Marine Fisheries Serv.,* 161 F.3d 584, 586–87 (9th Cir.1998); *Ferguson v. Ferguson,* 928 P.2d 597, 598 (Alaska 1996) (both describing the federal quota share program).

**33.** 50 C.F.R. § 679.40(a)(4)(i)-(ii).

**34.** 50 C.F.R. § 679.40(b)-(c).

**35.** 50 C.F.R. § 679.41.

This new federal regulation led to enforcement and record-keeping problems for the state. When the federal quota share program went into effect, the state only required one entry or interim-use permit for each vessel landing fish in Alaska.[36] However, under the federal quota share system each vessel could have numerous holders of fishing quotas each claiming landings of halibut and sablefish.[37] This situation led to discrepancies and omissions in the landings data received by the state and federal governments, as well as difficulties in determining who to prosecute (the holder of the fishing quota or the holder of the entry or interim-use permit) for possession of undersized fish, prohibited species, or violations of other state fish and game laws.[38] To resolve this problem, the Department of Fish and Game contacted the CFEC about issuing a regulation to require each holder of fishing quotas to have a state permit.[39] The result was 20 AAC 05.110(c),[40] which requires each person reporting a landing of fish under an individual fishing quota to hold a state entry or interim-use permit.[41] In issuing this regulation, the CFEC primarily relied for authority on AS 16.10.267, which requires each fisher selling fish in the state to possess a landing permit, limited entry permit, or interim-use permit.[42]

**36.** *See* November 6, 1996, memorandum from Phil Rigby, scientific program manager, Department of Fish and Game, to Earl Krygier, extended jurisdiction program manager, Department of Fish and Game (included in CFEC file on 20 AAC 05.110(c)); March 19, 1998, press release on new CFEC requirements for holders of individual fishing quotas.

**37.** *See id.*

**38.** *See id.; see also* e-mail correspondence in the CFEC file on 20 AAC 05.110(c).

**39.** *See* April 7, 1997, e-mail from Krygier at the Department of Fish and Game to Beccy Kalwara and Bruce Twomley at the CFEC and attached November 6, 1996, memorandum from Rigby to Krygier referenced in note 34, *supra*.

**40.** 20 AAC 05.110 provides:
Permit Required to Possess Fish or Shellfish.
(a) It is unlawful for any person to possess, within water subject to the jurisdiction of the state, any fish or shellfish, taken for a commercial purpose, aboard a fishing vessel commonly

*Procedural history*

This permit scheme led to some confusion when the State charged the appellees in this case. Initially, all three appellees were charged with failing to have an interim-use permit under 20 AAC 05.110(c), and the State seized the proceeds of their catches. Later, the State conceded that it could not forfeit fishing proceeds under 20 AAC 05.110(c) because a first violation of that regulation was only punishable by a fine of no more than $5,000.[43] The State then charged each appellee with an additional count of failing to have a landing permit under AS 16.05.675. Courts are required to forfeit the fish taken or retained as a result of a violation of that statute.[44]

The appellees all filed motions to dismiss. Judge Neville granted those motions, ruling that the appellees could not be convicted under AS 16.05.675 because the CFEC had never issued landing permits and the appellees could not get them. Judge Neville also found that the appellees could not be convicted under 20 AAC 05.110(c) because that regulation was invalid. Judge Neville gave several reasons for this conclusion: (1) the legislature had intended fishers landing fish caught in federal waters to get landing permits, not interim-use permits; (2) 20 AAC

used for taking that species of fish or shellfish unless the person has in his possession a valid interim-use or entry permit card allowing him to take the fish or shellfish in his possession with the gear with which the vessel is equipped unless waived by the commission for good cause.
(b) As used in this section, a "commercial purpose" includes any sale, purchase, trade, gift, or any portion of a commercial transaction.
(c) For purposes of this section, a person reporting a landing of fish under a federal individual fishing quota (IFQ) possesses fish for a commercial purpose.

**41.** *See* Minutes, November 14, 1997, and December 17, 1997, meetings of the CFEC.

**42.** *See* April 29, 1998, letter from the CFEC to Denise Branshaw denying her request to reconsider 20 AAC 05.110(c).

**43.** AS 16.43.970(a).

**44.** AS 16.05.723.

05.110(c) was inconsistent with the legislative purpose behind interim-use permits, which were intended to authorize fishers to operate specific gear in specific fisheries managed by the state; and (3) by requiring fishers harvesting fish in federal waters to hold permits that had been designed for fishers operating in state fisheries, the CFEC had created unintended conflicts with federal law. After dismissing the charges on these grounds, the district court ordered the State to return all the seized funds.

*Is the CFEC authorized to require holders of individual fishing quotas for halibut and sablefish to have interim-use permits to land fish in Alaska?*

■ The primary question raised by this appeal is whether the CFEC exceeded its statutory mandate by requiring holders of federal permits to fish for halibut and sablefish who fished exclusively in the EEZ to have state interim-use permits to land that catch in Alaska. An agency can exceed its statutory authority "either by pursuing impermissible objectives or by employing means outside its powers."[45] The State advances two reasons that the CFEC acted within its authority in promulgating 20 AAC 05.110(c): (1) the CFEC has authority to require interim-use permits for fishers operating in any fishery in which the CFEC has not limited entry; and (2) the regulation serves the CFEC's purposes of promoting the health of Alaska's fishery resources and fishing industry.[46]

The State supports this argument by reference to AS 16.43.210, which in part provides:

Interim-use permit; qualifications. (a) Pending the establishment of the maximum number of entry permits under AS 16.43.240 and the issuance of entry permits under AS 16.43.270, the commission shall issue interim-use permits under regulations adopted by the commission for each

fishery, not subject to a moratorium under AS 16.43.225, to all applicants who can establish their present ability to participate actively in the fishery for which they are making application.

(b) Before the issuance of the maximum number of entry permits for a given fishery, the commission may issue an interim-use permit to an applicant who may later become eligible for an entry permit under AS 16.43.270.

(c) To the extent that the commissioner of fish and game authorizes it under AS 16.05.050(a)(10), the [CFEC] may grant an interim-use permit to a person to engage in the commercial taking from a fishery on an experimental basis.

As the legislative history of the limited entry program and the wording of this statute suggest, the legislature intended interim-use permits to be "the first phase in the limited entry scheme."[47] The State's broader reading of AS 16.43.210—that the CFEC has authority to issue interim-use permits for any fishery in which it has not limited entry, regardless of who manages that fishery—ignores the legislature's intent in creating interim-use and landing permits. Alaska Statute 16.43.210 *requires* the CFEC to issue interim-use permits to all fishers who can establish their ability to participate actively in the fishery for which they are making an application.[48] Under the State's reading of AS 16.43.210(a), the CFEC would be obliged to issue an interim-use permit to any qualified applicant to fish in any fishery in the world. And because those permits authorize fishers to land fish in Alaska, it follows that the CFEC could not impose any special requirements on fishers operating in the EEZ when they sought to land their catch in Alaska. Yet the legislative history of AS 16.05.675, the landing permit statute, indicates that the legislature gave the Department of Fish and Game discretion to au-

**45.** *See State v. Hebert,* 743 P.2d 392, 394 (Alaska App.1987).

**46.** We apply our own judgment to determine if the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rulemaking authority.

*See Deubelbeiss v. Commercial Fisheries Entry Comm'n,* 689 P.2d 487, 492–93 (Alaska 1984).

**47.** *See Simpler v. State,* 728 P.2d 227, 229 (Alaska 1986).

**48.** *See* AS 16.43.210(a).

thorize landing permits so it could prevent fishers operating in the EEZ from landing their catch in Alaska (or at least regulate the manner in which those federal permit holders landed their catch) if doing so would serve state conservation and management goals.[49]

The more reasonable interpretation of AS 16.43.210(a) is that it requires the CFEC to issue interim-use permits to all qualified applicants to fish in commercial fisheries managed by the CFEC in which entry has not been limited—that is, fisheries over which the CFEC has authority to limit entry or impose a moratorium, but has not yet done so. This interpretation is supported by AS 16.43.210(a), which requires the CFEC to issue interim-use permits "pending" the CFEC's establishment of a limited entry program under AS 16.43.240, and by AS 16.43.100(a), which defines the CFEC's powers as "regulat[ing] *entry* into the commercial fisheries for all fishery resources *in the state.*" [50]

■ The State concedes that the CFEC's authority over halibut is limited to Alaska waters,[51] but argues that the state retains some jurisdiction over the halibut fishery, the extent of which has not been judicially determined. To support this argument, the State points to Board of Fisheries regulations that adopt the International Pacific Halibut Commission regulations by reference,[52] limit by-catch in the halibut fishery,[53] and require buyers and sellers of fish in Alaska to record their landings on Department of Fish and Game "fish tickets," [54] a practice that aids the administration of the federal quota share program.[55] But the relevant question here is not the extent of the state's general authority over the halibut fishery, but the extent of the CFEC's authority to require halibut and sablefish fishers landing fish harvested in the EEZ to hold interim-use permits. The CFEC was created to establish and administer the state's limited entry program.[56] The legislature authorized the CFEC to issue interim-use permits as a first phase in that program.[57] Under the Halibut Act, all authority to limit entry in the halibut fishery is held by the International Pacific Halibut Commission and the Secretary of Commerce.[58] The State acknowledged this much in district court, declaring that "the State has never taken the position that it can regulate the taking of halibut in any manner that is contrary to the federal law governing the taking of halibut." Furthermore, under the Magnuson–Stevens Act, the federal government exercises management authority over all the fisheries in the EEZ, including the halibut and sablefish fisheries.[59] Because the legislature only intended the CFEC to issue interim-use permits to applicants to fish in fisheries in which the CFEC could limit

---

**49.** *See* Committee Minutes, House Resources Committee hearing on H.B. 376 (May 23, 1983) (comments by Haley at CFEC); letter from Gorsuch, Attorney General, to Governor Sheffield on C.S.H.B. 376 (June 21, 1984); notes of interview with Williams of the CFEC (Senate Resources Committee file H.B. 376, 1983–84).

**50.** Emphasis added.

**51.** *See* Brief of Appellant at 11 ("The CFEC interim-use permit for halibut applies to all halibut possessed in *Alaska waters* ....") (emphasis added).

**52.** *See* 5 AAC 28.092; *see also* 50 C.F.R. § 679.3(b)(1) ("The conservation and management of groundfish in waters of the territorial sea and internal waters of the State of Alaska are governed by the Alaska Administrative Code at 5 AAC Chapter 28 and by the Alaska Statutes at Title 16.").

**53.** 5 AAC 28.070.

**54.** *See* 5 AAC 39.130(c) (requiring buyers and sellers to complete fish tickets); AS 16.05.690 (requiring each buyer of fish to keep a record); AS 16.05.050(a)(5) (authorizing the Department of Fish and Game to collect data to promote the purposes of the Title).

**55.** *See* 50 C.F.R. § 679.5 (incorporating fish ticket reporting requirements in the federal quota share program); 50 C.F.R. § 679.3 (providing that the "Alaska Administrative Code (5 AAC 39.130) governs reporting and permitting requirements using ADF & G 'Intent to Operate' and 'Fish Tickets.' ").

**56.** *See* AS 16.43.100; AS 16.43.210.

**57.** *See Simpler,* 728 P.2d at 229.

**58.** *See* 16 U.S.C. § 773(c).

**59.** *See F/V Baranof,* 677 P.2d at 1249 (citing 16 U.S.C. § 1811, 1812).

entry, and because the CFEC has no authority to limit entry in the halibut and sablefish fisheries in the EEZ, we conclude that the CFEC has no authority to require fishers in the EEZ to hold state interim-use permits.

The State points to subsections (b) and (c) of AS 16.43.210—which give the CFEC discretion to issue interim-use permits in two other situations—as evidence that the legislature "plainly intended that interim-use permits could be required by the CFEC in a variety of fisheries to which the CFEC has not limited entry to a maximum number of participants." But AS 16.43.100, which lists the duties and powers of the CFEC, directs the CFEC to "issue interim-use permits as provided in AS 16.43.210, 16.43.220, and 16.43.225." [60] As our supreme court observed in *Kalmakoff v. State,*[61] AS 16.43.100 does not give the CFEC broad discretion to issue interim-use permits as it sees fit; rather, "[t]he commission's discretion is . . . limited to that which is outlined in [the] provisions [listed in AS 16.43.100(8) ]." [62] None of those provisions authorize the CFEC to require persons fishing in federally managed fisheries in the EEZ to obtain interim-use permits. Although the permit requirement, by aiding the state's data collection and enforcement efforts, might serve the CFEC's purposes of promoting the health of Alaska's fisheries and fishing industry, that alone cannot justify an *ultra vires* regulation; a regulation banning oil tanker traffic in the EEZ might also serve those purposes, but would exceed the CFEC's authority to establish and administer the state's limited entry program.

The legislature apparently reached this same conclusion in 1984 when a salmon fisher with a valid federal permit but no state interim-use or entry permit sought to land his catch in Alaska. Legislators were informed that fishers operating in state waters could land their fish in Alaska with interim-use or entry permits, but that fishers with federal permits were "currently prohibited by state law from landing their catch in Alaska." [63] The legislature therefore did not direct the CFEC to issue the salmon fisher an interim-use permit; rather, at the CFEC's urging, the legislature passed a bill giving the commissioner of Fish and Game discretion to authorize the CFEC to issue landing permits in these circumstances. When the legislature enacted this legislation, it could not have intended to make landing permits available to holders of individual fishing quotas for halibut and sablefish because that federal program did not yet exist.[64] But the legislature gave the Department of Fish and Game discretion to require landing permits in the circumstances specified in the statute: when a fisher with a valid federal permit to harvest fish in the EEZ wants to land that fish in Alaska but holds no entry or interim-use permit.

The State argues that the legislature only intended landing permits to be issued when interim-use and entry permits were unavailable. But the State cites no convincing legislative history or statutory language to support this claim. Indeed, the legislative history provided by the State suggests a contrary conclusion; the enrolled bill report explains that the landing permit statute would allow the State "to require a landing permit even though *it could not necessarily require a fishing permit.*" [65] If the legisla-

60. AS 16.43.100(8).

61. 697 P.2d 650 (Alaska 1985).

62. *Id.* at 653. Since *Kalmakoff* was decided, the legislature amended AS 16.43.100(8) to add AS 16.43.225 to the list of statutes governing the CFEC's issuance of interim-use permits. AS 16.43.225 was enacted in 1991, and gives the CFEC authority to establish a moratorium on new entrants into at-risk fisheries.

63. *See* Sectional Analysis for C.S.H.B 376 (House Resources Committee file, 1983–84); *see also* notes from interview with Williams at the CFEC (Senate Resources Committee file on H.B. 376, 1983–84) (observing that "[i]n-state fisher[s are] eligible to land fish by holding an entry permit or interim-use permit.").

64. There is some indication in the legislative history that the CFEC was concerned with the bill's implications for the groundfish fishery, but the reasons for this concern are not clear. *See* notes from interview of Williams at the CFEC (Senate Resources Committee on H.B. 376, 1983–84).

65. Enrolled Bill Report for C.S.H.B. 376 (emphasis added).

ture had intended to limit landing permits to fishers ineligible for other state permits, it could have said so. It is equally plausible that the legislature created landing permits for fishers who do not have interim-use or entry permits because they operate only in federal waters.

■ We conclude that 20 AAC 05.110(c) is an invalid regulation because the CFEC has no authority to require fishers operating exclusively in federally managed fisheries in the EEZ to hold interim-use permits. The legislature specifically authorized the Department of Fish and Game to require fishers without interim-use or entry permits to get landing permits if they wished to land fish caught in the EEZ in an Alaska port. Because the Department of Fish and Game has never issued eligibility standards for landing permits under AS 16.05.675 or authorized the CFEC to issue such permits, the appellees could not be prosecuted for failing to obtain them.

The State asserts that the appellees could still be prosecuted under AS 16.05.675 for not having interim-use or entry permits. But AS 16.05.675 does not require fishers to have interim-use or entry permits; rather, it directs fishers without interim-use or entry permits to obtain landing permits.[66] The State also asserts that even if the CFEC has no authority to issue a regulation *requiring* interim-use permits for halibut and sablefish landings, it has discretion to issue those permits under AS 16.43.100(a)(5) and (8).[67] The State claims that because AS 16.10.267 required the appellees to have some type of permit to sell their fish in Alaska, they were obliged to obtain the one type of permit available to them—the interim-use permit. But the appellees were not charged with violating AS 16.10.267, and we will not reverse the district court because the appellees potentially committed an offense that was never charged. In any event, for the reasons discussed above, we conclude that the CFEC only has discretion to issue interim-use permits to fishers operating in fisheries over which the CFEC has authority to limit entry.

Because Judge Neville correctly ruled that 20 AAC 05.110(c) is an invalid regulation, and that the appellees could not be prosecuted for failing to obtain landing permits under AS 16.05.675, we affirm the court's orders granting the motions to dismiss.

*Did the district court err in dismissing the charge against Twohy for landing sablefish without a sablefish interim-use permit?*

The State argues that the court erred in dismissing the charge against Twohy for landing sablefish without an interim-use permit because the state has broader authority over sablefish fishing than halibut fishing, and because Twohy never sought dismissal of that charge. We find no merit to these claims. For the reasons discussed above, we conclude that the CFEC has no authority to require individual fishing quota holders to obtain interim-use permits before landing sablefish caught in the EEZ in Alaska. The State concedes that Twohy caught the sablefish he landed in the EEZ. Therefore, we express no opinion on the authority of the CFEC to require interim-use permits for sablefish harvested in Alaska's territorial waters regulated concurrently by the state and federal governments.[68]

*Conclusion*

The decision of the district court is AFFIRMED.

---

**66.** AS 16.05.675(a)(2) provides that "[a] person who does not hold a limited entry permit or interim-use permit issued under AS 16.43 may not deliver or land fish in the state unless the person ... has been issued a landing permit by the Commercial Fisheries Entry Commission."

**67.** AS 16.43.100(a)(5) and (8) provide:
To accomplish the purposes set out in AS 16.43.010, the commission shall ...

(5) designate, when necessary to accomplish the purposes of this chapter, particular species for which separate interim-use permits or entry permits will be issued;
. . . .
(8) issue interim-use permits as provided in AS 16.43.210, 16.43.220, and 16.43.225[.]

**68.** *See State v. Kalve,* 9 P.3d 291, 294 (Alaska App.2000).